(No. 37140.—

INTERNATIONAL BUSINESS MACHINES CORPORATION *et al.*, Appellees, vs. THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed September 28, 1962.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, AUBREY KAPLAN, RAYMOND S. SARNOW and A. ZOLA GROVES, Assistant Attorneys General; of counsel,) for appellant.

ADAMS, WILLIAMSON & TURNEY, of Chicago, (JACK A. WILLIAMSON and RUSSELL J. TURNEY, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook County entered in a proceeding under the Administrative Review Act reversing an administrative decision of the Department of Revenue which had denied plaintiff's claims for credit and refund under the Retailers' Occupation Tax Act. We have jurisdiction on direct appeal since the trial court expressly held unconstitutional a certain 1961 amendment to the Retailers' Occupation Tax Act, and since the public revenue is involved. Ill. Rev. Stat. 1961, chap. 110, par. 75.

In 1961, the General Assembly amended the Retailers' Occupation Tax Act to expand the definition of "sale at retail" to include any transfer of "possession of, or the right to the possession of" tangible personal property. (H.B. No. 1136, 72nd· General Assembly; Ill. Rev. Stat. 1961, chap. 120, par. 440, p. 1630.) The Use Tax Act was similarly amended. (H.B. No. 1135, 72nd General Assembly; Ill. Rev. Stat. 1961, chap. 120, par. 439.2, p. 1608.) The apparent purpose of this amendatory legislation was to make a lease of personal property the equivalent of a sale insofar as the incidence of the two taxes is concerned.

International Business Machines Corporation, hereinafter sometimes referred to as IBM, is engaged in the business of manufacturing, selling, servicing and leasing business machines, and, except for manufacturing, carries on all of these activities in Illinois. IBM paid the Department of Revenue, under protest, for the months of September and October, 1961, the sum of $20,000 on account of Illinois retailers' occupation, use, and municipal retailers' occupation taxes on its machine rental transactions in Illinois, and

secured a temporary injunction preventing such moneys from being paid into the State treasury. The Service Bureau Corporation, a machine rental customer of IBM, intervened as a plaintiff in the injunction suit.

IBM then filed claims for credit on account of such taxes with the Department of Revenue and duly protested the Department's tentative denial of such claims. A hearing was then had on such claims by the Department of Revenue, after which the Department made a final administrative decision disallowing all such claims in their entirety. Plaintiff then brought this proceeding under the Administrative Review Act to review the final administrative decision of the Department.

The transactions involved in the claims are rental receipts derived on and after September 1, 1961, from lease and rental transactions with IBM customers. It is undisputed that all the transactions involved are *bona fide* leases. The Department denied the claims in their entirety.

In reversing the decision of the Department of Revenue the trial court held, among other things, that the amendment to the Retailers' Occupation Tax Act is unconstitutional in that it embraces a subject not expressed in its title in violation of section 13 of article IV of the constitution of Illinois, and also involves an improper classification in violation of section 1 of article IX of the constitution of Illinois, and the due-process clauses of the State and Federal constitutions, and that the use tax is inapplicable to the lease transactions. The trial court also found that the claims for credit were presented by and on behalf of the persons who actually bore the burden of the taxes, and that no unjust enrichment would result from allowing the claims.

The principal question presented by this appeal is whether or not the amendment to the Retailers' Occupation Tax Act by House Bill No. 1136 of the 72nd General Assembly violates section 13 of article IV of the constitution of 1870 by embracing a subject not included within its

title. The title of the Retailers' Occupation Tax Act, which was not amended by House Bill No. 1136, is "An Act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption."

The pertinent constitutional provision is as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed; * * *." Const. of 1870, art. IV, sec. 13.

House Bill No. 1136 made several changes in the definitions section of the act, apparently designed to include rental transactions as sales. (Ill. Rev. Stat. 1961, chap. 120, par. 440.) The definition of "sale at retail" was expanded (the italics indicating new matter added by the amendment) as follows: " 'Sale at retail' means any transfer (conditional or otherwise) of the ownership of, or title to, *or possession of, or the right to possession of,* tangible personal property to a purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration."

The definition of "purchaser" was expanded to include "any one who, through a sale at retail, acquires the ownership of, or title to, *or possession of, or the right to the possession of,* tangible personal property for a valuable consideration."

Finally, the definition of "selling price" was amended by a proviso to the effect that that term may, at the election of a lessor, mean the retail selling price "which the lessee-purchaser would normally have been required to pay for the property at that time if the lessee-purchaser had bought the property in the ordinary sense of a purchase instead of leasing it."

It has been observed that objections to the validity of legislation based upon constitutional requirements as to titles are often made but seldom sustained. This does not mean, however, that the constitutional provision is without effect nor that it will not be applied in the proper case. Indeed this court has in the past not hesitated to strike down as unconstitutional legislative enactments or parts thereof which have run afoul of the constitutional provision. (*Johnson* v. *Daley,* 403 Ill. 338.) The general principles governing the sufficiency of the title of an act are easily stated, although the application of these principles to specific cases is not without difficulty. Thus, a title need not be an index, table of contents or summary of the provisions of the act, but is sufficient if it directs attention to the general scope, purview or ambit of the law. (*Department of Public Works and Buildings* v. *Chicago Title and Trust Co.* 408 Ill. 41; *Johnson* v. *Halpin*, 413 Ill. 257; *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581.) Generally speaking, where the title of the original act is repeated in the title of an amendatory act, anything may be included in the amendatory act that is embraced within the title of the original act. (*Gage* v. *City of Chicago,* 203 Ill. 26; *People ex rel. Bentson* v. *Bowen,* 9 Ill.2d 69.) However, it has been stated that "Amendatory provisions that are not germane to the subject expressed in the title of the original act are unconstitutional, unless the title of the act can be and is amended without violating the rule against dual subject matter." (1 Sutherland Statutory Construction, 3rd ed. Horack, par. 1908, pp. 346-7; *Kennedy* v. *LeMoyne,* 188 Ill. 255.) This court has recognized the possibility and propriety of amending an act to include matter not embraced in the original title provided the title is also amended to embrace the new matter. (*People ex rel. Gutknecht* v. *City of Chicago,* 414 Ill. 600; *Zisook* v. *Maryland-Drexel Neighborhood Redevelopment Corp.* 3 Ill.2d 570.) That procedure was not fol-

lowed, however, in the enactment of this amendatory legislation. The question, therefore, is not whether the legislature might properly have defined the word "sale" to include leases had the title of the act been amended. It is, rather, whether the business of leasing personal property may be taxed under an act the title of which refers only to "a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." In our opinion it cannot if either the constitution or the English language is to retain any semblance of integrity.

We believe that the appropriate considerations governing the disposition of this case are illustrated by a hypothetical example set forth in the opinion in *Rouse* v. *Thompson,* 228 Ill. 522, 533-4: "If the title of an act should be 'An Act to define and punish the crime of larceny,' it is clear that provisions defining perjury, arson or felonious homicide, and fixing the punishment of those offenses, would be subjects wholly foreign to the title of the act. But if the title should be, as is the case with our present Criminal Code, 'An Act to revise the law in relation to criminal jurisprudence,' the subject thus expressed would clearly be broad enough to include provisions defining and fixing the punishment, not only of these, but of all other imaginable offenses against the public law, and also all proper provisions for the prevention of crimes, for the indictment, trial, conviction and punishment of all classes of offenders, and for fixing the jurisdiction, both original and appellate, of the various courts in criminal cases, and prescribing the mode of procedure and the rules of evidence applicable to criminal trials. These subjects, multiplied as they are in detail, are all included in the general subject of criminal jurisprudence, * * *." In the *Rouse* case the court held that an act which referred in its title only to "primary elections of delegates to nominating conventions" could not include provisions relating to the holding of primaries for the nomination of

party candidates. The court, however, indicated that had the title been "An act to provide for the holding of primary elections by political parties or organizations," it would have been broad enough to include the selection of both party candidates and delegates to a party convention at a primary election. 228 Ill. 522, 534.

Defendant argues that the legislature may and frequently does use words in a statute in other than their usual sense. This is undeniably true, but that is not the point. The question here is not the power of the legislature to define terms for the purpose of a statute, but whether the content of the act goes beyond the subject expressed in its title. A somewhat ludicrous example may serve to illustrate the distinction. One of the horrible examples of legislative definitions is the English statute which is said to have provided: "Whenever the word 'cows' occurs in this Act it shall be construed to include horses, mules, asses, sheep and goats." (Cited in Cooper, Effective Legal Writing, 3; see Dickerson, Legislative Drafting, 90.) Such a technique might well be constitutionally permissible if the title of the act were "An Act relating to domestic animals," but it is unquestionably bad under a title referring only to cows.

In our opinion a title referring only to a tax upon "persons engaged in the business of selling tangible personal property to purchasers for use or consumption" is not, without amendment, sufficiently broad to include provisions extending the tax to persons engaged in leasing personal property in *bona fide* rental transactions. We hold, therefore, that the amendatory act, to the extent that it purports to embrace such leases within the terms of the Retailers' Occupation Tax Act, is in violation of section 13 of article IV of the constitution of 1870 and is void.

Since the title of the Use Tax Act is "An Act in relation to a tax upon the privilege of using tangible personal property in this State," the companion amendment to that act by

House Bill No. 1135 is not subject to the same constitutional objection. The use tax is, however, complementary to the retailers' occupation tax, and the Use Tax Act provides: "If the seller of tangible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois, then the tax imposed by this Act shall not apply to the use of such tangible personal property in this State." (Ill. Rev. Stat. 1961, chap. 120, par. 439.3.) Since, because of the invalidity of the amendment to the Retailers' Occupation Tax Act, IBM is not subject to retailers' occupation tax with respect to its lease transactions, it follows that its lessees are not subject to use tax. The trial court was correct in reversing the decision of the Department of Revenue and in allowing the claim for credit in its entirety.

Although the foregoing considerations dispose of the case, it should be noted, in the interest of preventing possible misunderstanding in the future, that there is still another ground for holding that the use tax is not applicable to the use by a *bona fide* lessee. The tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail * * *." (Ill. Rev. Stat. 1961, chap. 120, par. 439.3.) "Use" is defined (with certain exceptions not here pertinent) as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property." (Ill. Rev. Stat. 1961, chap. 120, par. 439.2.) This definition was not changed by the 1961 legislation. Even though the 1961 legislation attempted to obliterate the distinction between a sale and a lease and a lessee and a purchaser, it did not eliminate the distinction between ownership and possession. Indeed, the inclusion of both terms in the amended definitions of "purchase at retail," "purchaser," and "sale at retail" involves a recognition that "ownership" and "possession" are not synonymous. A mere lessee does not exercise over the property any rights or powers incident to the ownership of

the property. Thus, in the absence of a change in the statutory definition of "use," the lessee does not use the property in the statutory sense and is not subject to use tax.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*