No. 39669.—

FLORENCE HORNOF *et al.*, Appellees, *vs.* THE KROGER CO. *et al.*, Appellants.—(THE SPERRY & HUTCHINSON COMPANY *et al.*, Separate Appellants.)

*Opinion filed May 23, 1966.—Rehearing denied September 21, 1966.*

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL and JOHN J. O'TOOLE, Assistant Attorneys General, of counsel,) for appellant Director of Revenue.

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS; ARVEY, HODES & MANTYNBAND; WINSTON, STRAWN, SMITH & PATTERSON; and NICHOLAS J. CONSTANTINE, all of Chicago, for separate appellants.

JOHN E. TIMM and ARTHUR F. SIEBEL, both of Chicago, for appellees Florence Hornof *et al.*

KENART M. RAHN and PHILIP J. SIMON, both of Chicago, for appellees A. L. Fleischman *et al.*

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook County finding certain provisions of two tax statutes to be unconstitutional and enjoining their enforcement.

Prior to 1963, neither the Illinois Retailers' Occupation Tax Act nor the Illinois Use Tax Act explicitly applied to transactions where trading stamps were redeemed for items of personal property. (See: Ill. Rev. Stat. 1961, chap. 120, pars. 440-453, and pars. 439.1-439.22.) In 1963, however, section 1 (par. 440) of the Retailers' Occupation Tax Act was amended by the addition of the following provision: "Persons who engage in the business of transferring tangible personal property upon the redemption of trading stamps issued by others shall be deemed to be engaged in the business of selling such property at retail and shall be liable for and shall pay the tax imposed by this Act on the basis of the retail value of the property transferred upon redemption of such stamps." Companion legislation added comparable

language to section 2 (par. 439.2) of the Use Tax Act. Both amendments became effective January 1, 1964.

The corporate plaintiff, which gives trading stamps to its customers, joined with the individual plaintiff, Florence Hornof, who had received trading stamps, in the filing of a complaint which challenged the constitutionality of the 1963 amendments and sought to enjoin the collection of the taxes they authorized. Similar actions were filed by other individuals and were consolidated with the original action. The ultimate defendants in the consolidated cause were State revenue officials and various companies engaging in the trading stamp business in Illinois. A temporary injunction was issued directing that all occupation and use taxes collected by the defendant companies were to be held in a protest fund pending the outcome of the litigation.

Before the cause was heard, the two sections were again amended effective July 1, 1965. These amendments reenacted the 1963 amendments, with the exception that the words "issued by others" were omitted. (Ill. Rev. Stat. 1965, chap. 120, pars. 440 and 439.2.) Plaintiffs then amended their pleadings to attack the validity of the 1965 amendments and also bolstered their constitutional attack on the 1963 amendments. A second temporary injunction was issued to impound in a separate protest fund taxes collected under authority of the 1965 amendments.

It was stipulated that all the defendant trading stamp companies conduct their business in substantially the same manner. Each company contracts with its respective licensee merchants to furnish trading stamps and books to them for a fee measured by the amount of stamps ordered and agrees to redeem the stamps at its redemption store when presented. The merchants, in turn, deliver trading stamps to their customers in conjunction with the sale of personal property, generally at the rate of one stamp for each ten-cent purchase. No separate charge is made for the stamps, and no reduction in the selling price of the merchandise is

made if the trading stamps are declined. Each stamp company publishes a catalogue showing the articles which may be acquired upon surrendering a stated number of stamps. The customer may receive the article of his choice upon delivering the required number of stamps and paying the appropriate amount of tax. Regardless of who has possession of the stamps, by the terms of the licensing agreements, the title thereto at all times remains with the trading stamp companies.

Plaintiffs insist that the 1963 amendments effected an arbitrary and discriminatory classification when, by use of the words "issued by others," persons who both issued and redeemed their own stamps were excluded from the operation of the amendments. They argue that the 1965 amendments constitute a legislative recognition of a defect in the 1963 amendments. While defendants have advanced an argument that there was a reasonable basis for the classification effected by the 1963 amendments, based on real and substantial differences between the classes created, there is no need to decide that issue. It is elementary that this court will not determine the constitutionality of a provision of an act where the party urging the invalidity is in no way aggrieved by the operation of such provision. (*Schreiber* v. *County Board of School Trustees*, 31 Ill.2d 121; *Klein* v. *Department of Registration and Education*, 412 Ill. 75; *Liberty National Bank of Chicago* v. *Collins*, 388 Ill. 549.) There is no showing here that plaintiffs were aggrieved or sustained injury by reason of the classification about which complaint is made. Moreover, it is only where portions of a statute are so connected with each other that the court can say the General Assembly would have passed the act with the invalid portion eliminated, that an entire act will be held void. (*Lee* v. *Retirement Board*, 31 Ill.2d 252; *Grennan* v. *Sheldon*, 401 Ill. 351.) Since the legislature in this instance amended the 1963 enactments merely by deleting the words "issued by others," it must be presumed that it did not re-

gard the deleted words so vital that the 1963 amendments would not have been enacted without them. Thus, even if we were to hold that the words "issued by others" created an arbitrary classification, this would not affect the remainder but would merely make all stamp redemption transactions taxable. *Beatrice Foods* v. *Lyons,* 12 Ill.2d 274; *People ex rel. Holland Coal Co.* v. *Isaacs,* 22 Ill.2d 477; *City of Elmhurst* v. *Buettgen,* 394 Ill. 248.

The first of the contentions directed to the invalidity of both the 1963 and 1965 amendments is that the measure of the occupation tax on the redemption of trading stamps is made the "retail value" of the property transferred, whereas the measure in all other transactions embraced by the act is "gross receipts" from sales of personal property. This, according to plaintiffs, creates a dual standard and violates the uniformity requirements of section 1 of article IX of the Illinois constitution and renders the amendments void.

We see no lack of uniformity here despite the difference in terminology used to describe the tax base, particularly when section 1 of the Retailers' Occupation Tax Act is considered in its entirety. The term "Gross receipts" is defined as the "total selling price or the amount of such sales," *i.e.* sales of tangible personal property, while the phrase "Selling price or amount of sale" is defined as meaning "the consideration for a sale valued in money whether received in money or otherwise." (Ill. Rev. Stats. 1963 and 1965, chap. 120, par. 440.) Thus, "gross receipts" does not necessarily reflect a sale for cash, but is in effect the value placed upon the property by the seller and accepted by the buyer. It follows, we believe, that the terms "gross receipts" and "retail value" represent the same thing so far as the tax base is concerned. What is "gross receipts" to the seller is "retail value" to the buyer—they are merely different views of the same transaction. When no money changes hands, as in the case of stamp redemptions, it would be cumbersome to refer to gross receipts in a strict sense. Thus, "retail

value" was interjected as an equivalent term of reference when no money changed hands. In both instances the tax is placed on the value of the consideration in the transaction, and in our opinion, the uniformity requirement of the constitution is not violated.

Complaint is also made that the term "retail value" is so vague, indefinite and uncertain that men of ordinary intelligence must guess at its meaning and differ as to its application, thus causing the amendments to violate due process of law. In addition, it is contended that an unlawful delegation of the legislative power results in violation of article III of the constitution because those who redeem stamps fix the "retail value" of the property transferred and thus determine the amount of tax. Neither contention has merit. It is commonly known and understood that retail value is defined as the open market value of the goods sold or the price that the purchaser is expected to pay for the goods purchased at retail, (See: *Wade* v. *Rathbun,* 23 Cal. App. 2d 758, 67 P.2d 765; *Great American Ins. Co.* v. *Railroad Furniture Salvage of Mobile, Inc.,* 276 Ala. 394, 162 S.2d 488,) and in our opinion the term provides a clear and understandable guideline without further legislative exposition. *Cf. South Premium Stamp Co.* v. *United States,* 191 F. Supp. 158.

Nor does the circumstance that the stamp companies will determine the retail value of the merchandise sold for stamps constitute a delegation of legislative power. The legislature has declared the rate of taxation and has directed that such rate should be applied to a definite, ascertainable base; that is, the retail value of the merchandise given in exchange for trading stamps. It is the legislature which has declared what the law will be, and the act of the stamp companies in fixing retail prices is no more than an anticipated act of discretion pursuant to the law. See: *People ex rel. Bernat* v. *Bicek,* 405 Ill. 510; *People ex rel. Chicago Dryer Co.* v. *City of Chicago,* 413 Ill. 315.

Plaintiffs also argue that when trading stamps are issued, the purchase price of the tangible personal property is increased to cover the costs of the stamps to the merchant and an occupation or use tax is paid on the entire amount. They then hypothesize that, when a tax is exacted again at the stamp redemption store, the stamp saver is being assessed double taxation on the value of the trading stamps. This theory, as well as other arguments of plaintiffs based on the premise that stamps are sold, is not supported by the record. Both tax acts define a "Sale at retail" as the "transfer of the ownership of or title to tangible personal property to a purchaser, for use * * * for a valuable consideration." (Pars. 439.2 and 440.) Under the stipulated facts, no separate charge is made by the merchant for stamps, no reduction in selling price is made if the customer declines the stamps, and title to the stamps at no time passes from the trading stamp companies. Thus, without consideration or change of title there could be no sale of trading stamps by the merchant and the theory of double taxation is groundless.

Finally, it is contended by plaintiffs that the 1963 and 1965 amendments violate section 13 of article IV of the constitution because they purportedly embrace a subject not expressed in the titles of the respective acts. The constitutional provision is obeyed if all of the provisions of a statute relate to one subject indicated in the title and are parts of it, or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view. (*Memorial Gardens Ass'n, Inc.* v. *Smith,* 16 Ill.2d 116; *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539.) The amendments here do no more than expand the definitions of "retailers" already covered in the acts and clearly relate to the subjects expressed in the titles. *International Business Machines Corp.* v. *Department of Revenue,* 25 Ill.2d 503, upon which plaintiffs rely, is not in point. Its holding was that an amendment which extended the occupation tax to the rental of personal

property was not embraced in, or reasonably connected with, a title which purported to relate only to "a tax upon persons engaged in the business of selling tangible personal property * * *." (25 Ill.2d at 506.) The 1963 and 1965 amendments in this case, to the contrary, relate to taxation on the business of selling tangible personal property as expressed in the title.

The decree of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion with respect to the tax monies held in protest funds.

*Reversed and remanded, with directions.*