(No. 40178.—

THE CITY OF EAST ST. LOUIS, Appellee, *vs.* UNION ELECTRIC COMPANY, Appellant.

*Opinion filed May 18, 1967.—Rehearing denied September 27, 1967.*

538

POPE AND DRIEMEYER, of East St. Louis, for appellant.

ROBERT F. GODFREY, City Attorney, of East St. Louis, (THOMAS A. MATTHEWS and DONALD J. KREGER, of counsel,) for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

The plaintiff, the city of East St. Louis, (hereafter called the City) filed suit for a declaratory judgment in the circuit court of St. Clair County and asked that the court declare that the defendant, Union Electric Company, (hereafter called the Company) was obligated to the City under the terms of a franchise ordinance and did not have the right to deduct moneys paid to the City under a utility tax ordinance from monies otherwise due the City under the franchise ordinance.

The court entered judgment for the City. A constitutional question is concerned in this appeal by the Company.

On November 30, 1948, the city of East St. Louis passed ordinance No. 3193, the franchise ordinance. This ordinance granted to the defendant "* * *. the right to construct, maintain and operate an electric distribution and transmission system in the streets, alleys and all other public places in the city of East St. Louis * * *." As consideration for the franchise to be granted, the ordinance provided that the Company would pay to the City $18,500 within five days after the ordinance became effective, and $25,000 for the year 1949. For the years 1950 through 1979 the ordinance provided that the Company would pay the City

annually an amount by which "* * * 2% of the gross revenue up to but not in excess of $500,000.00 from the sale by Company in the preceding calendar year to all customers in the City of East St. Louis (except the City of East St. Louis and other municipalities, political subdivisions and municipal or governmental agencies) of electric energy for use in the City of East St. Louis; 1½% on the gross revenue from all such sales in excess of $500,000.00 and up to but not in excess of $1,000,000.00; 1% on the gross revenue from all such sales in excess of $1,000,000.00 and up to but not in excess of $1,500,000.00, and ½% on the gross revenue from all such sales in excess of $1,500,-000.00, shall exceed the aggregate amount of all payments made by Company to the City of East St. Louis, or which accrued and for which Company became liable, during the preceding calendar year, for or on account of permit and inspection fees, or any other fees, licenses, charges, taxes or other exactions of whatsoever kind or character not in derogation of the rights, franchise, permission and authority hereby granted (except general taxes on tangible property) imposed by any valid ordinance of the City of East St. Louis."

On December 2, 1948, the Company filed with the City its written acceptance of the terms, provisions and conditions of the franchise ordinance. This formed a contract which by section 9 of the ordinance would be in effect until December 31, 1979.

Thereafter, the Company fully satisfied its liability under the terms of the franchise ordinance for each calendar year up to and including 1959. However, since 1960 the Company has not made any payments to the City pursuant to the franchise ordinance. The Company has denied that it has incurred any liability under the terms of the franchise ordinance since the enactment by the City of the utility tax ordinance (No. 3698) on June 15, 1960, pursuant to authority granted to the City by the legislature in section 8—

11—2 of the Illinois Municipal Code. (Ill. Rev. Stat. 1965, chap. 24, par. 8—11—2.) This utility tax ordinance provides in pertinent part that a tax be imposed on all persons engaged in certain designated occupations or privileges, including "Persons engaged in the business of distributing, supplying, furnishing, or selling electricity for use consumption within the corporate limits of the City of East St. Louis, Illinois, and not for resale, at the rate of 4.48% of the gross receipts therefrom."

In addition, section 36 of the Public Utilities Act (Ill. Rev. Stat. 1965, chap. 111⅔, par. 36) provides in paragraph (a) that whenever a tax is imposed on a public utility by a municipality pursuant to section 8—11—2 of the Illinois Municipal Code, such utility may bill its customers "* * * an additional charge equal to the sum of (1) an amount equal to such municipal tax, or any part thereof, (2) 3% of such tax, or any part thereof, as the case may be, to cover costs of accounting, * * *." Paragraph (a) of the Act also requires that the additional charge be separately stated on the utility bill of each customer.

For the year 1960 and each subsequent year the Company has paid to the City the amounts due under the terms of the utility tax ordinance, and the Company has billed its customers a separate, additional charge equal to the utility tax required to be paid, plus 3 percent of such tax to cover accounting costs. The Company does not question the validity of the utility tax ordinance. However, the Company does contend that the payments it makes under the terms of the utility tax ordinance qualify under section 6(B)(b) of the franchise ordinance as "* * * taxes * * * imposed by any valid ordinance of the City of East St. Louis," so as to permit such utility tax payments to be deducted from any liability the Company may have to the City under the franchise ordinance and this according to the express provisions of the franchise ordinance.

Thus, the Company argues that in 1960 and thereafter to date it has had no financial obligation to the City under the provisions of the franchise ordinance, because its payments pursuant to the utility tax ordinance for these years have exceeded the total of the concerned percentages of the Company's gross revenues from the sale of electric energy calculated under section 6(B)(a) of the franchise ordinance. The Company argues that the language of the franchise ordinance in expressing the intent of the parties is clear and does not require construction. Further, the Company contends that section 3 of the utility tax ordinance unconstitutionally impairs the Company's contract with the City under the franchise ordinance by providing that such utility tax "* * * shall be in addition to the payment of money, * * * as compensation for the use of its streets, alleys, or other public places, or installation and maintenance therein, thereon, or thereunder of poles, wires, pipes or other equipment used in the operation of the taxpayers' business."

The City argues that the payments made to it by the Company under the utility tax ordinance are not "taxes" within the intendment of section 6(B)(b) of the franchise ordinance. The rationale of this position is that the utility tax is in reality an assessment against the electrical consumers and not against the Company, since the charge is authorized to be made against the consumers, the charge is in fact made against and actually paid by the consumers, and the Company receives and retains 3% of the tax monies received to cover its costs of collection.

Basically, these arguments were addressed to the trial court by the City and the Company. The court ruled for the City on the basis of the intent of the parties as expressed in the franchise ordinance. The court *inter alia* observed that there was no dispute that the utility tax was passed on to its consumers by the Company and that the additional charge it imposed on its consumers was sufficient to cover

its accounting expenses. The court found also there was no dispute that the amount the Company received from its consumers was equal to or in excess of the amount the Company paid the City under the utilities tax ordinance.

It will be useful in considering the problem presented to review briefly certain rules of construction. We observe that the same rules which govern the construction of statutes are to be applied in construing municipal ordinances. (*Village of Park Forest* v. *Wojciechowski,* 29 Ill.2d 435; *Dean Milk Co.* v. *City of Chicago,* 385 Ill. 565.) The primary purpose of the construction of ordinances is to determine the intent of the lawmaking body as revealed by the language used. (*Reitman* v. *Village of River Forest,* 9 Ill.2d 448; *City of Nameoki* v. *City of Granite City,* 408 Ill. 33.) And a construction leading to an absurd result will be avoided, if possible. (*Harrison* v. *People ex rel. Boetter,* 195 Ill. 466; *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224.) Whenever a word or phrase used in an ordinance becomes an issue in a legal proceeding its strict meaning is not as important as the sense in which it was used by the lawmaking body, (*Jennings* v. *Calumet National Bank,* 348 Ill. 108; *Du Bois* v. *Gibbons,* 2 Ill.2d 392) and "A statute or ordinance must receive a sensible construction, even though such construction qualifies the universality of its language." *City of Elmhurst* v. *Buettgen,* 394 Ill. 248, 253.

We deem that the only reasonable interpretation to be made of the two ordinances in conjunction requires that the Company's liability under the franchise ordinance be determined under the terms of such ordinance without regard to any payments the Company may have advanced to the City from its consumers under the utility tax ordinance.

On a literal and superficial view it might appear as if the utility tax ordinance imposed a tax burden upon the Company, but on examination it is evident that the burden was placed on the consumers. The Company as authorized simply passed on the new charges to its consumers and the

consumers not only paid such charges to the City but also paid the Company the expenses it incurred while serving as a collector or conduit of taxes from the consumers to the City. Adoption of the Company's argument would give it the best of possible worlds. Its reasoning would permit the Company to have its consumers pay the burdens of the utility tax ordinance without the Company's incurring any real liability, and at the same time the Company would be able to relieve itself of its real and defined liabilities under the franchise ordinance by setting off payments made by its consumers under the utility tax ordinance. If we accept the Company's position that the utility tax ordinance really imposed a tax on the Company in the usual sense, then such imposition incongruously would terminate (as to the years here concerned, at least) the Company's liabilities under the franchise ordinance, increase its profits and reduce its expenses while increasing the costs of its consumers. Plainly, such a construction would be unreasonable. The Company cannot plead that it has the burden of the utility tax and then pass it on to its consumers and in the same voice relieve itself of its obligations under the franchise ordinance by pleading tax payments under the utility tax ordinance which were not made by it.

It is manifest to us that when the City and Company entered into the franchise contract by means of the franchise ordinance the parties did not intend that payments which might be received by the City from the Company's consumers, (as here under the utility tax ordinance,) should be deemed taxes paid by the Company within the meaning of the franchise ordinance so as to permit their being set off against the determined liabilities of the Company under the franchise contract.

The legislature in authorizing the imposition of additional charges by municipalities through ordinances such as the utility tax ordinance here did not contemplate that an enacting municipality would thereby be decreasing other

revenues, unless the municipality so intended, for the authorizing statute provides that any new tax thereunder "* * * may be in addition to the payment of money, or value of products or services furnished to the municipality * * *." (Ill. Rev. Stat. 1965, chap. 24, par. 8—11 —2.) The City certainly intended that revenues received under the utility tax ordinance were to be independent of other revenue sources, as section 3 of such ordinance provides: "Such tax shall be in addition to the payment of money, or value of products or services furnished to this municipality by the taxpayer as compensation for the use of its streets, alleys, or other public places, or installation and maintenance therein, thereon, or thereunder of poles, wires, pipes or other equipment used in the operation of the taxpayers' business."

Too, section 6 of the ordinance declares: "The city has immediate need for the revenue to be produced by the tax imposed by this ordinance in order to meet the cost of providing services necessary for the immediate preservation of the public peace, health and safety, and this ordinance is passed as an urgent measure." It is obvious the City did not contemplate that by enacting the ordinance it would be affecting disadvantageously its source of revenue under the franchise ordinance by reducing the Company's obligations.

It is apparent from what we have said that we deem that the argument of the Company that the utility tax ordinance unconstitutionally impairs the obligation of contract between it and the City is without merit. The franchise contract and the rights and obligations thereunder, are not altered, amended or impaired by the utility tax ordinance. Under the tax ordinance the consumers paid the taxes and the Company was but a conduit for the transmittal of moneys to the City. Its consumers paid the Company its costs of transmitting the funds. The Company so far as the franchise contract was concerned remains in the same position it occupied prior to the enactment of the utility tax

ordinance. Where the *status quo* of the contractual relationship is undisturbed it cannot be plausibly said that there has been any impairment of contract.

The cases relied on by the Company in this argument are factually distinguishable from those of this case. In *Village of West City* v. *Illinois Commercial Telephone Co.*, 372 Ill. 493, the village passed an ordinance on May 7, 1912, which granted the phone company the right to construct a telephone system in the village. The company was to furnish in return certain nonfinancial considerations to the village. On March 7, 1938, the municipality adopted a resolution which purported to repeal the franchise ordinance and to levy a one-dollar annual rental against each of the company's poles in excess of a designated height as compensation for the use of village property occupied by each pole. The issue in this case was whether the 1912 ordinance was a contract or only a license revocable at will. The court held that it was a contract which could not be varied by one of the parties. Further, the court held that the consideration given precluded the village from later demanding another and different consideration. Here, there has been no such attempt by the City to vary the terms of a contract by a later ordinance which seeks to repeal the earlier contract ordinance and exact a consideration different from the consideration called for in the earlier ordinance. Enforcement of the utility tax ordinance here does not change the Company's financial obligations under the franchise ordinance.

*City of Springfield* v. *Inter-State Independent Telephone and Telegraph Co.*, 279 Ill. 324, and *City of Springfield* v. *Springfield Consolidated Railway Co.*, 208 Ill. App. 11, also involved ordinances which sought to impose rental charges for the use of municipal property which would have been in addition to the considerations called for by the franchise contracts concerned. The cases are not pertinent here.

546

The judgment of the circuit court of St. Clair County is affirmed.

*Judgment affirmed.*