Robert C. AGRON, on behalf of himself and all other telephone subscribers of Illinois Bell Telephone Company who are situated similarly to him, Plaintiff-Appellant,

v.

ILLINOIS BELL TELEPHONE COMPA-NY and United States of America, Defendants-Appellees.

Robert C. AGRON, etc., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Robert E. CLEVELAND and Frances H. Cleveland, on behalf of themselves and all other telephone subscribers and customers of Illinois Bell Telephone Corporation similarly situated, Plaintiffs-Appellants,

v.

ILLINOIS BELL TELEPHONE COMPA-NY, an Illinois Corporation, and United States of America, Defendants-Appellees.

Nos. 71–1022, 71–1023, 71–1138.

United States Court of Appeals,
Seventh Circuit.

Sept. 22, 1971.

Alex Elson, Chicago, Ill., Willard J. Lassers, Aaron S. Wolff, Elson, Lassers & Wolff, Chicago, Ill., of counsel, for Agron.

Irving Goodman, Chicago, Ill., for Cleveland.

Howard J. Trienens, Chicago, Ill., for Ill. Bell Telephone Co.

Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Ernest J. Brown, Atty. U. S. Department of Justice, Washington, D. C., William J. Bauer, U. S. Atty., Chicago, Ill., Meyer Rothwacks, Elmer J. Kelsey, Attys., Tax Division, Department of Justice, Washington, D. C., for the United States.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

SWYGERT, Chief Judge.

The substantive issue in these three appeals [1] is whether certain occupation taxes imposed on Illinois Bell Telephone Company (IBT) by the State of Illinois and various Illinois municipalities are properly includable in the base on which is computed the federal excise tax on "amounts paid for * * * communication services" under section 4251 of the Internal Revenue Code of 1954. Our resolution of this issue disposes of all three appeals.

Since there was no dispute as to any material fact, the Agron case was determined on cross-motions for summary judgment. Indeed, the case turns wholly on the interpretation and application of various state and federal statutes. The plaintiff, Robert C. Agron, a Chicago resident, is furnished telephone service by IBT. As a telephone subscriber, he is subject to the federal communications tax imposed by section 4251. IBT is required by section 4291 of the Code to collect the federal taxes which are imposed upon its customers, and under section 7501(a) it must hold them in "a special fund in trust for the United States." The amounts collected are paid over to the Internal Revenue Service each month. Treas.Reg. § 49.6302(c)–1. Agron contends that IBT, by including in the federal tax base those amounts identified on his telephone bills as attributable to state and local taxes, has improperly computed the federal tax which it collects from its subscribers and pays over to the United States.[2]

For years the State of Illinois has imposed a "Messages Tax" on "persons engaged in the business of transmitting messages" which is measured by the "gross receipts from such business." Ill. Rev.Stat. ch. 120, §§ 467.1, 467.2 (1969). This tax was generally imposed at the rate of three percent until 1965 when the rate was increased to four percent. In 1967 the rate was further increased to five percent. In addition to the state tax, IBT is subject to certain local messages taxes. In 1955 Illinois authorized municipalities to tax "Persons engaged in the business of transmitting messages by means of electricity, at a rate not to exceed 5% of the gross receipts from such business originating within the corporate limits of the municipality." Ill.Rev.Stat. ch. 24, § 8–11–2 (1969). Many Illinois municipalities, including the City of Chicago, have exercised this authority to tax IBT.

At the same session at which municipalities were authorized to tax IBT, the Illinois legislature added subsection (a) to Ill.Rev.Stat. ch. 111⅔, § 36 (1969). That addition provided that whenever a municipality exercised the authority to impose an occupation tax on a utility:

> such utility may charge its customers, in addition to any rate authorized by this Act, an additional charge equal to the sum of (1) an amount equal to such municipal tax, or any part thereof, (2) 3% of such tax, or any part thereof, as the case may be, to cover costs of accounting, and (3) an amount equal to the increases in taxes and other payments to governmental bodies resulting from the amount of such additional charge.

IBT imposes this additional charge by filing a supplemental schedule applicable to the municipality which had imposed

1. Pursuant to stipulation, Nos. 71–1022 and 71–1023 were ordered consolidated. By order No. 71–1138 was argued together with Nos. 71–1022 and 71–1023. For convenience, we will defer discussion of No. 71–1138 to the end of this opinion.

2. Agron's position may be illustrated by reference to a typical telephone bill sent to him by IBT. His January 19, 1967 bill listed the following charges:

| | Due to taxes * | U.S. Tax | Total |
|---|---|---|---|
| Telephone Service — $17.50 | .59 | 1.81 | $19.90 |

 * City and State Taxes.

As can be seen, IBT added the amount attributed to "City and State Taxes" to the basic charge for telephone service and arrived at a base for the federal tax of $18.09. Agron contends that his federal tax should have been $1.75 (10% of $17.50), rather than $1.81 (10% of $18.09).

the tax. Such a supplemental schedule, if it falls within the legislative authorization cannot be suspended by the Illinois Commerce Commission.[3] Section 36(a) also provides that the additional charge:

shall be made by the addition of a uniform percentage to the amounts payable for intrastate utility service in such municipality and shall be shown separately on the utility bill to each customer.

In 1965, when Illinois increased the rate of the state messages tax, the legislature again amended section 36 by adding subsection (b). This addition performed essentially the same function as subsection (a); it authorized an additional charge to offset any increase in the state tax rate above the prior rate of three percent and provided that IBT could file immediately effective supplemental schedules to recoup any such tax increase.[4]

IBT has computed the federal excise tax which it collects for the government from its customers on a base which includes the separately stated state and local taxes imposed on it. According to Agron this procedure resulted in an overstatement of his federal tax. His efforts to recover the alleged overpayment began in 1967 when he filed a class action against IBT. The suit was eventually dismissed for lack of jurisdiction apparently on the ground that it was essentially a tax refund suit and the jurisdictional requirement of section 7422(a) of the Internal Revenue Code that the taxpayer file a refund claim before bringing such a suit was not complied with. Agron then filed two refund claims, one on behalf of himself individually and another on behalf of himself and all similarly situated subscribers to IBT's services and also on behalf of IBT, and brought the instant suit for refund.

Agron initially named IBT and the United States as defendants in all three counts of his complaint. Count I sought recovery of the amount of Agron's individual tax refund claim; Count II asserted a claim for refund of taxes on behalf of a class consisting of all of IBT's subscribers; and Count III sought a refund not only on behalf of all IBT subscribers, but also on behalf of IBT. The Government moved that all three counts be dismissed, but suggested that Count I would state a jurisdictionally sound cause of action if IBT were not joined as a defendant.[5] Agron then voluntarily dismissed IBT from Count I and moved for summary judgment on all three counts. The Government answered Count I and filed a cross-motion for summary judgment on that count while persisting in its claim that the court lacked jurisdiction over Counts II and III. IBT moved

---

3. When Illinois municipalities have imposed or increased the local messages tax, IBT has almost invariably filed supplemental schedules to recoup the amount of the tax from its customers. On at least one occasion, however, an inadvertent delay in the preparation of a supplemental schedule resulted in IBT's bearing an increased rate of municipal tax for two and one-half months without recouping the amount of the tax from its subscribers.

4. Although the additional charge authorized by section 36(b) apparently is not required to be separately stated on the subscriber's telephone bill, IBT has added the amount of the increased state taxes in excess of three percent to the amount of local taxes and has stated the two in one separate category designated as attributable to state and city taxes. Agron seeks recovery only of the amount of federal tax attributable to the inclusion of the separately stated state and local taxes in his federal tax base; he does not contend that the federal tax base should not include the three percent state messages tax which has for many years been imposed on IBT and which although not separately stated, is recouped from IBT's subscribers through rates established after the formal procedure of notice and hearing provided by Ill.Rev.Stat. ch. 111⅔, § 36 (1969).

5. The Government's jurisdictional objection to Count I was based on its contention that under 28 U.S.C. § 1346(a)(1), as interpreted in United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L. Ed. 1058 (1941), joinder of any other defendant with the United States is impermissible. Accordingly, the dismissal of IBT from Count I removed the alleged jurisdictional defect.

for summary judgment on Counts II and III on the ground that it was not a necessary or a proper party.

The district court granted Agron's motion for summary judgment against the United States on Count I [6] and subsequently denied Agron's motion for summary judgment on Counts II and III, ruling in effect that the refund claims filed by the plaintiff on behalf of IBT and the members of the class he purports to represent were not sufficient to satisfy the jurisdictional requirement for maintaining a statutory refund suit. Int.Rev.Code of 1954, § 7422(a). The district court granted Agron judgment for $23.98 against the United States on Count I and dismissed Counts II and III for lack of jurisdiction. Agron appeals the dismissal of Counts II and III and the Government appeals the judgment for Agron on Count I.

We hold that IBT properly computed the federal tax which it collects from its customers and that the district court erred in entering judgment for Agron on Count I. That holding disposes of these appeals and we need not consider the correctness of the district court's order dismissing Counts II and III.

Agron first contends that as a matter of Illinois law, those state and local taxes which are separately stated on his telephone bill, while nominally imposed on IBT, are actually direct taxes on telephone subscribers and that his payment of taxes imposed on him by the State of Illinois and the City of Chicago cannot be included in "amounts paid for * * communication services" under section 4251(a) of the Internal Revenue Code.[7]

The Illinois statutes authorizing and imposing a tax on the occupation or business of transmitting messages by means of electricity are explicit. Ill.Rev.Stat. ch. 120, § 467.2 and ch. 24, § 8–11–2 (1969). For instance, section 467.1 provides that: " 'Taxpayer' means a person engaged in the business of transmitting messages"; and section 467.2 states that: "A tax is imposed upon persons engaged in the business of transmitting messages in this State." It would be difficult to interpret such specific language as imposing a tax on telephone subscribers. It may be that IBT normally "passes on" to its subscribers the economic burden of the state and local occupation taxes [8] just as every unsubsidized business must "pass on" and recover from its customers every item of operating expense—including state and federal taxes—if it is to operate profitably.[9] But the fact that the telephone subscriber ultimately bears the financial burden of the tax does not justify our ignoring the clear language of the Illinois statutes and holding that the tax is "imposed" on subscribers.

The decisions of the Illinois Supreme Court make clear that it is the privilege of carrying on certain businesses within the state that the legislature intended to tax in enacting the occupation taxes. *See, e. g.*, People's Drug Shop, Inc. v.

---

6. Agron v. Illinois Bell Tel. Co., 319 F. Supp. 418 (N.D.Ill.1970).

7. We have assumed, with Agron, that if the state and local taxes in question were actually direct taxes imposed on telephone subscribers, then amounts attributable to those taxes could not be considered "amounts paid for * * * communication services." Because we hold that the State of Illinois does not consider its state and local taxes to be direct taxes on subscribers, we need not reach and do not decide that question.

8. However, as we pointed out in note 6, *supra*, on at least one occasion IBT was forced to bear an increased rate of municipal tax for two and one-half months. Agron does not suggest that IBT's fail-

ure to "pass the tax on" to its subscribers in any way affected its liability to pay the tax.

9. *Cf.* FPC v. United Gas Pipe Line Co., 386 U.S. 237, 243, 87 S.Ct. 1003, 18 L.Ed. 2d 18 (1967) ; and Galveston Elec. Co. v. Galveston, 258 U.S. 388, 399, 42 S.Ct. 351, 66 L.Ed. 678 (1922). In those cases the Supreme Court stated that an allowance for taxes should be included in determining regulated utilities' expenses for purposes of fixing rates which will provide a fair return. Thus the economic burden of the federal taxes is "passed on" to consumers but that does not result in the taxes' being "imposed" on consumers.

Moysey, 384 Ill. 283, 285–87, 51 N.E.2d 144, 146 (1943). In Reif v. Barrett, 355 Ill. 104, 109, 188 N.E. 889, 892 (1933),[10] the court stated that the purpose of an occupation tax is:

> [E]ither to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking, or operating a given occupation, trade, or profession. Its effect is to license a person engaged in a given calling or occupation. A license in form may not be issued to a taxpayer, but the payment of the tax is the license under the authority of the state to engage in such occupation.

Thus it is apparent that Illinois has not considered its occupation taxes to be direct taxes on consumers.

Even though the economic burden of the occupation taxes is "passed on," the Illinois courts have consistently ruled that such taxes are not imposed on consumers. In Winter v. Barrett, 352 Ill. 441, 455–456, 186 N.E. 113, 120–121 (1933), the court rejected the argument that the state tax on those engaged in the business of selling personal property at retail was imposed on consumers. The court pointed out that retailers could take the tax into consideration in fixing the selling price of their goods, "the same as they do their property taxes, rent, and other expenses of doing business"; but the court held that the tax remained on the seller and that the seller must report and pay tax on the full amount he receives for his property, including any amount added to the price to compensate for the tax. *See also*

Vause & Striegel, Inc. v. McKibbin, 379 Ill. 169, 173, 39 N.E.2d 1006, 1008 (1942). The Illinois Supreme Court used the same reasoning to reject an analogous argument by a liquor retailer who contended that federal and state taxes nominally imposed on distillers were actually "passed on" to retailers and ultimately to consumers and that amounts attributable to those taxes could not be included in gross receipts subject to the occupation tax on retailers. Fischman & Sons, Inc. v. Department of Revenue, 12 Ill.2d 253, 146 N.E.2d 54 (1957). *See also* People v. Werner, 364 Ill. 594, 5 N.E.2d 238 (1936). A three-judge federal district court has followed the Illinois courts in ruling that the Illinois Retailers' Occupation Tax—even if passed on—is not imposed on consumers. United States v. Department of Revenue, 202 F.Supp. 757 (N.D.Ill.), aff'd per curiam, 371 U.S. 21, 83 S.Ct. 117, 9 L.Ed.2d 95 (1962).

Even if the language of the Illinois statutes and court decisions were less clear, a further bar exists to our accepting Agron's argument that the state and local occupation taxes are imposed on consumers. For many years the Illinois Supreme Court consistently ruled that the state constitution, art. IX, § 1, limited the legislature to three forms of taxation: (1) property taxes on a valuation basis, (2) occupation taxes, and (3) franchise or privilege taxes.[11] This restrictive interpretation of the state constitution was recently disavowed by Thorpe v. Mahin, 43 Ill.2d 36, 42–45, 250 N.E.2d 633, 636–637 (1969); but the tax on IBT was obviously intended,

---

10. Reif v. Barrett, insofar as it held that the Illinois Constitution limited the legislature to property taxes, occupation taxes and franchise or privilege taxes, was overruled by Thorpe v. Mahin, 43 Ill.2d 36, 45, 250 N.E.2d 633, 637 (1969). *See* n. 11, *infra.*

11. *See, e. g.,* Reif v. Barrett, 355 Ill. 104, 110, 188 N.E. 889, 893 (1933); Bachrach v. Nelson, 349 Ill. 579, 589, 182 N. E. 909, 913 (1932). Only recently has the Illinois Supreme Court, in upholding the state income tax, Ill.Rev.Stat. ch. 120, § 1–101 (1969), overruled *Reif* and

*Bachrach* and held that Ill.Const. art. IX, § 2, broadened the forms of taxation beyond those stated in art. IX, § 1. Thorpe v. Mahin, 43 Ill.2d 36, 42–45, 250 N.E.2d 633, 636–37 (1969). Even then, the court referred to the tax as one on the privilege of receiving income. 43 Ill. 2d at 45, 250 N.E.2d at 638.

We note that Illinois recently adopted a new constitution generally effective July 1, 1971. However, the new constitution is not relevant to our interpretation of statutes passed many years ago under the old constitution.

when enacted, to fall within the constitutional authorization of taxes on occupations. We may not ignore the obvious intention of the Illinois legislature and rule that this occupation tax is a direct tax on consumers. Further, the title of the state taxing statute applicable to IBT is, "An Act in relation to a tax upon persons engaged in the business of transmitting messages"; and under art. IV, § 13 of the state constitution, no tax may be imposed upon persons not described in the title of the taxing statute. *See,* *e. g.,* International Business Machines Corp. v. Department of Revenue, 25 Ill. 2d 503, 185 N.E.2d 257 (1962). *Cf.* Central Television Serv., Inc. v. Isaacs, 27 Ill.2d 420, 189 N.E.2d 333 (1963).[12]

Agron's argument that the occupation tax on IBT is imposed on him and other telephone subscribers rests entirely on certain language in a recent case, East St. Louis v. Union Elec. Co., 37 Ill.2d 537, 542–43, 229 N.E.2d 522, 525 (1967), cert. denied, 390 U.S. 948, 88 S.Ct. 1034, 19 L.Ed.2d 1136 (1968), to the effect that the burden of a certain municipal occupation tax fell directly on consumers:

> On a literal and superficial view it might appear as if the utility tax ordinance imposed a tax burden upon the Company, but on examination it is evident that the burden was placed on the consumers. The Company as authorized simply passed on the new charges to its consumers and the consumers not only paid such charges to the City but also paid the Company the expenses it incurred while serving as a collector or conduit of taxes from the consumers to the City.

The district court accepted Agron's argument and, relying on *East St. Louis,* ruled that "Illinois does not consider these amounts on the telephone bill due to state and local taxes to be levies on the company, but, rather, charges on the telephone subscriber." 319 F.Supp. at 421. We disagree. *East St. Louis* involved the construction of a 1948 municipal ordinance which granted the Union Electric Company the right to operate its distribution system within the City of East St. Louis. In return, the company agreed to pay annually the amount by which certain percentages of its gross receipts exceeded all other payments to the city for "fees, licenses, charges, taxes or other exactions * * * imposed by any valid ordinance of the City of East St. Louis." In 1960 when the city imposed a municipal occupation tax on the company, a controversy developed over whether the occupation tax was a "tax" within the 1948 franchise ordinance. If it were, the electric company would have had no further liability for franchise payments. The company, although it passed on the occupation tax to its customers, refused to make further franchise payments and asserted that to require it to do so would unconstitutionally impair its franchise contract with the city.

The question before the Illinois Supreme Court was whether an occupation tax which imposed no additional economic burden on the electric company fell within the intendment of "taxes" as expressed in the city's 1948 ordinance. Relying on the rule that, "A statute or ordinance must receive a sensible construction, even though such construction qualifies the universality of its language," Elmhurst v. Buettgen, 394 Ill. 248, 253, 68 N.E.2d 278, 282 (1946), the court held that the company's liability for the occupation tax did not discharge its obligation to make franchise payments.

*East St. Louis* does not support the district court's ruling since it merely recognized the economic reality that the ultimate consumer bears the burden of all prior taxes imposed on those from whom he receives goods or services. That case held only that the parties did not intend in 1948 that the imposition in the future of a tax which imposed no burden on the electric company would discharge its obligations under the franchise ordinance. We agree with the Government

---

12. A municipal tax upon persons not described in the authorizing statute is also void. *Cf.* Wabash R.R. v. Department of Revenue, 28 Ill.2d 128, 191 N.E. 2d 244 (1963).

that the Illinois Supreme Court could hardly have intended by its decision to rewrite whole sections of the statutes and ordinances imposing occupation taxes on utilities.

From the foregoing, we conclude that the statement of the Illinois Supreme Court in People's Drug Shop, Inc. v. Moysey, 384 Ill. 283, 287, 51 N.E.2d 144, 146 (1943), concerning the Retailers' Occupation Tax is applicable to the state and local occupation taxes presently imposed on IBT: "Unambiguous provisions of the * * * Act proclaim, and the decisions of this court uniformly hold, that the tax imposed is upon retailers and not upon consumers, and that the sole duty of paying the tax rests upon the former."

Agron next contends that even if separately stated state and local messages taxes are not directly "imposed" on telephone subscribers, they are, nevertheless, identified as taxes and ought not be considered a charge for telephone service within the meaning of section 4251(a) of the Internal Revenue Code. The Government counters that the additional charge is merely part of the compensation demanded by IBT for furnishing the service of transmitting messages; thus, amounts paid to reimburse IBT for its payment of the state and local messages taxes—just as amounts paid to reimburse IBT for all other taxes and for labor costs and equipment repairs—are paid for telephone service within the meaning of the statute. We agree with the Government. All costs incurred in making a product or service available—including the cost of federal, state and local taxes—are ultimately borne by consumers. That the cost of taxes imposed on manufacturers and retailers is added into the price at which goods are sold, even if such taxes are itemized and specifically identified, simply increases the price the consumer must pay to receive the goods or services.

Additional charges contained in supplemental schedules filed by IBT under Ill.Rev.Stat. ch. 111⅔, §§ 36(a) and 36 (b) (1969), even though in economic terms they result in the passing on of the burden of state and local messages taxes to subscribers, are simply a part of the price such subscribers must pay to IBT to receive telephone service.[13] Agron argues that the additional charges are not a part of IBT's price for its services because these charges are not authorized by rate schedules arrived at independently by the Illinois Commerce Commission after notice and hearing. We deem this fact to be without significance. The additional charges were authorized by the Illinois legislature which, in enacting sections 36(a) and (b) of Ill.Rev.Stat. ch. 111⅔ (1969), was not imposing a tax on consumers or creating a new type of charge for utility service but was simply providing a convenient, efficient procedure by which IBT could bypass the costly administrative rate-making procedure and obtain minor increases in the authorized rate for its services.

In his attempt to show that the additional charges collected by IBT are not a part of the price for telephone service, Agron argues that persons living in cities which have not imposed a local tax on IBT receive the same service at a lower price than persons living in cities where a local tax on IBT is in effect. For example, according to Agron, the basic charge for a three minute call between Chicago and Lincoln, Illinois, is $1.00. Using Agron's figures, if the call originates in Lincoln, the total charge is $1.10—$1.00 plus ten cents federal tax; however, if the call originates in Chicago, the total charge is $1.16—$1.00 plus five cents local tax, plus eleven cents federal

13. Perhaps it might also be argued that even direct federal, state and local taxes on subscribers are a part of the "price" those subscribers must pay to receive telephone service. But that simply illustrates the extent to which the problem presented by this case is one of semantics; it does not change our view that amounts IBT demands, under schedules authorized by Illinois law, as reimbursement for taxes it pays are as much a part of its price for its services as amounts reimbursing it for labor or equipment costs.

tax. Agron concludes that the Chicagoan is required to pay ten percent more federal tax for the identical service because of the inclusion of Chicago's separately stated local tax in the determination of the charge for the service. Agron has failed to recognize, however, that Chicago, by imposing a municipal tax on IBT, has increased the cost of IBT's doing business within the city with the consequence that Chicago residents must pay more *for telephone service* to provide IBT a fair return. Since the federal tax is based on "the sum of all charges for * * * [telephone] services included in the [consumer's] bill," it follows that the amount of federal tax which Chicago residents must pay would increase;[14] and neither IBT nor the State of Illinois can defeat that result by providing for the itemization of those amounts passed on to consumers which are attributable to taxes on IBT. *Cf.* Vause & Striegel, Inc. v. McKibbin, 379 Ill. 169, 173, 39 N.E.2d 1006, 1008 (1942).

In Lash's Products Co. v. United States, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251 (1929), the Supreme Court was faced with an argument essentially identical to that made by Agron. There, a manufacturer, who was subject to a federal tax computed on the price at which he sold certain products and who had notified his customers that the price of his products reflected his tax liability, argued that amounts which he received from his customers to reimburse him for his obligation to pay the federal tax were not a part of the "price" of his products and could therefore not be included in the base on which the federal tax was computed. In effect, the manufacturer argued, as does Agron here, that amounts attributable to his tax liability were not charges for the product but were for taxes. The language of the Supreme Court in rejecting the manufacturer's argument, 278 U.S. at 176, 49 S.Ct. at 100 is equally applicable to Agron's claim:

> [T]he tax is laid and remains on the manufacturer and on him alone. * * The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all.
>
> * * * * * *
>
> The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price. * * *[15]

---

14. The Government places much reliance on the fact that Congress provided that the tax be computed on "the sum of all charges." We agree that that language indicates a general congressional intention that the amount charged by a telephone company should not be broken down into its component parts for purposes of computing the tax. For instance, it is clear that no attempt should be made to separate out the amounts attributable to taxes, of whatever kind, which were considered by the Illinois Commerce Commission in fixing IBT's general rate structure. Agron concedes this by his failure to seek recovery of any taxes attributable to the inclusion in the federal tax base of amounts which IBT receives as reimbursement for its payment of that part of the state messages tax (the intial three percent) which is not separately stated.

However, Agron *correctly points out* that the "sum of all charges" language does not itself solve the problem presented in these appeals; for it is only the sum of all charges *for telephone service* which is subject to tax. The Government appears to concede that not every charge which might be contained in a telephone bill should be included in the federal tax base. For instance, amounts paid by telephone subscribers in order to be listed in "yellow page" directories are considered payments for advertising rather than for telephone service and are not subject to the federal tax. *See* Rev.Rul. 58–299, 1958–1 Cum.Bull. 436; *cf.* Rev. Rul. 68–92, 1968–1 Cum.Bull. 488. Thus the crux of the problem before us remains whether the additional charge stated on IBT's bills is an increase in the price *for telephone service* resulting from IBT's liability for the state and local occupation taxes.

15. *Cf.* James v. Dravo Contracting Co., 302 U.S. 134, 160, 58 S.Ct. 208, 82 S.Ct. 155 (1937); Dow Jones & Co. v. United States, 128 F.Supp. 748 (Ct.Cl.1955); Sun Oil Co. v. Gross Income Tax Div., 238 Ind. 111, 149 N.E.2d 115 (1958);

Applying the Court's reasoning to Agron's argument, we conclude that even though the additional charges imposed on Agron and other telephone subscribers may be directly attributable to state and local taxes paid by IBT, those additional charges are nonetheless a part of the price IBT demands for its services. Accordingly, they are properly includable in the base on which the federal tax on "amounts paid for * * * communication services" is computed.

In sum, we conclude that the procedure by which IBT computes and collects the tax imposed by section 4251 of the Internal Revenue Code does not result in any over-assessment of the federal tax and that the district court erred in granting a tax refund to Agron. This holding renders moot the issues presented by Agron's appeal. Since we hold that there was no underlying cause of action on which a class suit could be based, we need not reach the procedural problems raised by Agron's attempting to bring a class or derivative action for tax refund, and we intimate no opinion on the correctness of the district court's dismissal of Counts II and III.

Our ruling on the merits of Agron's claim also disposes of the Clevelands' appeal. Their original complaint was filed in the Circuit Court of Cook County on behalf of themselves and all similarly situated IBT subscribers. That suit was against IBT alone and alleged the same improper computation of federal tax as was asserted by Agron. After removal to the federal district court, the plaintiffs filed an amended complaint naming the United States as defendant with IBT. Both defendants sought dismissal of the complaint on the ground, among others, that the plaintiffs had failed to file an administrative refund claim as required by section 7422(a) of the Internal Revenue Code. The district court granted the dismissal.

The Clevelands rely on essentially the same facts as those presented by Agron but urge a different legal theory. They argue that their suit is not for refund of taxes and that their dispute is solely with IBT, whom they contend has overcharged its customers without authority under either federal or state statute. They argue that, accordingly, the United States need not be a party and that the filing of an administrative tax refund claim is not a prerequisite to their bringing suit.

Because we hold that IBT properly computed the federal tax in accordance with the provisions of the Internal Revenue Code, the underlying basis of the Clevelands' complaint falls and therefore we need not decide whether the Clevelands should have been required to file an administrative tax refund claim or who, as between IBT and the federal government, might be liable for any alleged overcharge.

The order granting Agron's motion for summary judgment and denying the Government's motion for summary judgment as to Count I of Agron's complaint is reversed; the order dismissing the Clevelands' complaint is affirmed; and Agron's appeal from the dismissal of Counts II and III of his complaint is dismissed as moot.

---

Fischman & Sons, Inc. v. Department of Revenue, 12 Ill.2d 253, 146 N.E.2d 54 (1957); Hoffman v. City of Syracuse, 2 N.Y.2d 484, 161 N.Y.S.2d 111, 141 N.E. 2d 605 (1957); People v. Werner, 364 Ill. 594, 5 N.E.2d 238 (1936). These cases recognize that increases in the amount a purchaser must pay for goods or services in order to compensate the seller for taxes imposed on him or on those from whom he purchased the goods are a part of the "price" of the goods themselves. The prior taxes merely increase the cost of the goods.