(No. 51581.—

CHARLES A. GETTO, Appellee, v. THE CITY OF CHICAGO *et al.,* Appellants.

*Opinion filed October 19, 1979.—Rehearing denied November 30, 1979.*

348

UNDERWOOD and RYAN, JJ., dissenting.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

James R. Bryant, Jr., Edward A. Butts, and L. Bow Pritchett, of Chicago, for appellant Illinois Bell Telephone Company.

Sidney Z. Karasik and Leonard E. Handmacher, of Chicago, for appellee.

Joseph J. Butler, Jr., of Chicago (Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., of counsel), for *amicus curiae* Illinois State Federation of Labor.

Richard G. Ferguson, Laurence D. Lasky and James N. Nowacki, of Chicago (Isham, Lincoln & Beale, of counsel), for *amicus curiae* Commonwealth Edison Company.

Peter B. Freeman, Garland H. Allan and Peter F. Lovato, III, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for *amicus curiae* Peoples Gas, Light and Coke Co.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Charles A. Getto, "individually and on behalf of all persons similarly situated," filed this action in the circuit court of Cook County against defendants, the city of Chicago and Illinois Bell Telephone Co. (Bell), alleging that defendants had erroneously collected from Bell's customers sums greatly in excess of the amounts due under the defendant city's municipal message tax. On behalf of all Bell customers in the city of Chicago, plaintiff sought a declaratory judgment, a temporary injunction, a permanent injunction, an accounting, a refund of tax moneys, and an award of attorney's fees. The city and Bell filed separate and joint motions to dismiss the complaint; the circuit court denied the motions to dismiss and issued a preliminary injunction directing Bell to segregate and sequester that portion of the message tax alleged by plaintiff to be excessive. Both defendants appealed from the circuit court's interlocutory order (58 Ill. 2d R. 307(a)(1)), and we allowed defendants' motions for direct appeal to this court under Rule 302(b) (58 Ill. 2d R. 302(b)).

There are several issues presented in this appeal, but the controlling question involves the construction of section 8—11—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 8—11—2),. which in pertinent part provides:

> "The corporate authorities of any municipality may tax any or all of the following occupations or privileges:
> 1. Persons engaged in the business of transmitting messages by means of electricity, at a rate not to exceed 5% of the gross receipts from such business originating within the corporate limits of the municipality.
> * * *
> For the purpose of the taxes enumerated in this section:
> 'Gross receipts' means the consideration received for

the transmission of messages, \*\*\* and for all services rendered in connection therewith valued in money, whether received in money or otherwise, including cash, credit, services and property of every kind and material and for all services rendered therewith, and shall be determined without any deduction on account of the cost of transmitting such messages, without any deduction on account of the cost of the service, product or commodity supplied, the cost of materials used, labor or service cost, or any other expenses whatsoever."

Pursuant to this statutory authority, the city enacted an ordinance which imposed a tax "upon all persons engaged in the business of transmitting messages by means of electricity at the rate of five per cent of the gross receipts from such business [originating within the city of Chicago]." (Chicago Municipal Code sec. 132—31 (1978).) The definition of "gross receipts" in the Chicago Municipal Code (Chicago Municipal Code sec. 132—30 (1978)) is, for our purposes here, identical to the definition contained in the statute.

Section 36(a) of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 36(a)) provides:

"Whenever a municipality pursuant to Section 8—11—2 of the Illinois Municipal Code, as heretofore and hereafter amended, imposes a tax on any public utility, such utility may charge its customers, in addition to any rate authorized by this Act, an additional charge equal to the sum of (1) an amount equal to such municipal tax, or any part thereof, (2) 3% of such tax, or any part thereof, as the case may be, to cover costs of accounting, and (3) an amount equal to the increase in taxes and other payments to governmental bodies resulting from the amount of such additional charge. Such utility shall file with the Commission a true and correct copy of the municipal ordinance imposing such tax; and also shall file with the Commission a supplemental schedule applicable to such municipality which shall specify such additional charge and which shall become effective upon filing without further notice. Such additional charge shall be

made by the addition of a uniform percentage to the amounts payable for intrastate utility service in such municipality and shall be shown separately on the utility bill to each customer. The Commission shall have power to investigate whether or not such supplemental schedule correctly specifies such additional charge, but shall have no power to suspend such supplemental schedule. If the Commission finds, after a hearing, that such supplemental schedule does not correctly specify such additional charge, it shall by order require a refund to the appropriate customers of the excess, if any, with interest, in such manner as it shall deem just and reasonable, and in and by such order shall require the utility to file an amended supplemental schedule corresponding to the finding and order of the Commission."

The term "gross receipts" upon which the 5% municipal tax is imposed has been construed by defendants to include not only customer billings for the transmission of messages originating within the city, but also all taxes assessed on those billings, including the municipal tax itself. For example, if a customer's pretax monthly bill were $10 (ignoring, for the sake of simplicity, the existence of Federal and State taxes), the amount upon which the municipal tax is imposed would not be $10, but $10.50. This results in a municipal tax of 52½ cents, instead of 50 cents, plus a correspondingly larger amount withheld by Bell for its accounting costs.

Exhibits contained in the record show that, immediately following the enactment of the enabling legislation, representatives of the public utilities operating in Illinois met with personnel of the Illinois Commerce Commission and a formula was approved for the addition of a percentage to be added to the net (pretax) billings "in order for them [the utilities] to retain the same amount of dollars after the municipal tax is applied as before the tax was applied." These percentages, determined by means of an algebraic equation, are added to the billings and passed on to the customers. In this case they equal 6.5% of the

customer's pretax bill.

In his complaint plaintiff alleged that defendant's computation of "gross receipts" to which the tax was applicable did not conform to the statutory definition of "gross receipts"; was capable of being compounded to infinity; was irrational, unreasonably burdensome, and oppressive; and deprived plaintiff of due process. Plaintiff also averred that the Illinois Commerce Commission had no power to adjudicate the validity and constitutionality of an ordinance or statute; that he was without an adequate remedy at law; and that the large number of Bell customers in Chicago, the common questions of law and fact, and the advantages of a single common judgment required that the suit be maintained as a class action. In his prayer for relief plaintiff sought a declaration that the part of the message tax constituting a tax on itself was illegal, invalid, and a violation of due process; he also asked that the circuit court temporarily and permanently enjoin defendants from collecting the alleged excess amounts, or, alternatively, that the court order the money paid into a protest fund, pending the outcome of the cause; that the court order Bell to make a complete accounting of the Chicago message tax collected by it; and that judgment be entered ordering refunds of excessive amounts paid by Bell's Chicago customers.

Bell filed a motion to dismiss, asserting that the municipal tax was an occupational tax on the business of transmitting messages by electricity, and not a tax on the telephone subscribers. The amounts shown as city taxes in its bills, Bell argued, were, therefore, merely part of the total price for telephone service. Since plaintiff's contention was, essentially, that an excessive amount was charged for service, Bell argued, plaintiff was required to seek a remedy before the Illinois Commerce Commission, which has primary jurisdiction over telephone rates. (Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 36, 76.) The city filed a

motion to dismiss, substantially similar to Bell's motion, alleging also that the "taxpayer" was Bell and that the Illinois Commerce Commission was the proper forum in which plaintiff should seek a remedy.

Plaintiff filed a memorandum in opposition to the motions and defendants, upon leave of court, filed a joint motion to dismiss, averring that the factual allegations in plaintiff's complaint failed to state a cause of action and were insufficient to support either a cause of action in the circuit court or a class action, and that the circuit court lacked primary jurisdiction to order refunds of excessive telephone rates. Alternatively, defendants maintained that if the complaint stated a cause of action it was for declaratory judgment rather than equitable relief and the cause should be transferred from the chancery division of the circuit court.

The circuit court, finding that defendants had improperly construed the gross receipts base of the city message tax to include the tax itself, entered an order denying the motions to dismiss the complaint and issued a preliminary injunction. The injunction directed Bell to pay into a special protest fund that portion of the municipal message tax charge which exceeded 5% of "gross receipts" and that part of the additional charge for collection and accounting based on the excessive tax. The court allowed the cause to proceed as a class action and reserved for later consideration the other items of relief sought by plaintiff.

Defendants contend that plaintiff lacked standing to bring this action for the reason that the tax was levied on Bell and that it, and not plaintiff, paid the city message tax; that the "additional charge," if improperly collected, resulted in an excessive telephone rate; that the Illinois Commerce Commission, pursuant to section 36(a) and section 72 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 36(a), 76), has primary jurisdiction to order refunds of excessive telephone rates; and that the

proper forum for determining whether the rate was improperly collected is the Illinois Commerce Commission. *Amicus curiae* Commonwealth Edison Company argues that the defendants have correctly construed the statute and that "the legislature intended no deduction for amounts collected on account of the tax itself." It argues, too, that "a tax computed on receipts which include charges made on account of the tax is constitutional."

*Amicus curiae* People's Gas, Light & Coke Company contends that plaintiff lacks standing to seek an interpretation of the ordinance; that the circuit court "lacks subject matter jurisdiction over plaintiff's claim for refund"; that the complaint fails to state a cause of action; that the General Assembly and the city council "assumed the Illinois Supreme Court's interpretation of 'gross receipts' in enacting the enabling act and ordinance"; that plaintiff is estopped from obtaining retroactive relief; and that his claim is barred by the statute of limitations.

We consider first the question of plaintiff's standing to bring this action. We do not agree with defendants that because plaintiff is not the initial taxpayer he is without standing to challenge the validity of the ordinance. A similar question was involved in *Crane Construction Co. v. Symons Clamp & Manufacturing Co.* (1962), 25 Ill. 2d 521. In *Crane*, plaintiff, the lessee of certain construction equipment, challenged the amendments to the Retailers' Occupation Tax Act and Use Tax Act that made those acts applicable to lease transactions as well as sales (held unconstitutional in *International Business Machines Corp. v. Department of Revenue* (1962), 25 Ill. 2d 503). Like the message tax in the present cause, the retailers' occupation tax (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) was levied upon those engaged in particular occupations. Similarly, an accompanying use tax authorized the nominal taxpayer to pass on the entire tax to its customers. Addressing the defendants' contention in *Crane*

that plaintiff, since it was not the taxpayer, lacked standing to challenge the tax, the court, after noting the "complementary and interlocking nature" of the retailers' occupation tax and the use tax, said that plaintiff was not compelled to rely upon the lessor for protection of its interest and that "To the extent to which the validity of the use tax and its application to plaintiff is dependent upon the validity of the retailers' occupation tax, it may also challenge that tax." (25 Ill. 2d 521, 528.) This observation is equally applicable to the present taxing scheme.

In support of their contention that Bell is the taxpayer and that plaintiff is without standing to bring this action, defendants cite *Agron v. Illinois Bell Telephone Co.* (7th Cir. 1971), 449 F.2d 906, *cert. denied* (1972), 405 U.S. 954, 31 L. Ed. 2d 231, 92 S. Ct. 1171.

*Agron* involved the question whether the Illinois message tax and the same Chicago city message tax considered here were properly includable in the tax base on which the Federal excise tax was computed. Agron contended that the State and city taxes were actually imposed on telephone subscribers and that the amounts paid for those taxes could not be included in "amounts paid for *** communication services" as provided by the Federal statute. The court disagreed; after discussing the Illinois precedents, without reference, however, to *Crane Construction Co. v. Symons Clamp & Manufacturing Co.* (1962), 25 Ill. 2d 521, the court determined that the message taxes were occupation taxes imposed upon Illinois Bell and that the charges passed along to subscribers could be included in the tax base for the Federal excise tax.

We do not consider *Agron* controlling. Unlike here, the question of the plaintiff's standing to bring that action was neither raised by the parties nor decided by the court. Clearly Bell's subscribers, who have fully borne the burden of the city's message tax, have "a personal claim, status or

right which is capable of being affected" (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 376), and thus have standing to bring this action.

We consider next the contention of the defendants and *amici* that the Illinois Commere Commission has primary jurisdiction to order refunds of excessive telephone rates and that plaintiff has not exhausted his administrative remedies. In *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, the court considered the doctrine of exhaustion of remedies and concluded that exceptions to the requirement should be made only where an ordinance or statute is attacked as unconstitutional in its entirety, where there exist multiple remedies before an administrative body and at least one has been exhausted, or where irreparable harm will result from further pursuit of administrative remedies. (60 Ill. 2d 350, 358.) In *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, the court, citing *Van Laten v. City of Chicago* (1963), 28 Ill. 2d 157, and *County of Lake v. MacNeal* (1962), 24 Ill. 2d 253, recognized that "[a] party will not, of course, be required to exhaust his administrative remedies when it would be patently useless to seek relief before local bodies." 74 Ill. 2d 80, 88.

It is not disputed that since the enactment of the enabling legislation the Illinois Commerce Commission has authorized utilities to compute the tax in the manner followed here. Although we do not read plaintiff's attack on the ordinance as an assertion that it is "unconstitutional in its entirety" (*Allphin*), we are of the opinion that the undisputed facts demonstrate that an attack on the percentage permitted to be charged, on the grounds asserted here, would indeed be futile, thus invoking the exception recognized in *Northwestern University v. City of Evanston.*

The sole issue presented here is one of statutory interpretation, and there is no question which requires the

Commerce Commission's expertise. Although under section 36(a) of the Public Utilities Act the Commission has the power "to investigate whether or not such supplemental schedule correctly specifies such additional charge" (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 36(a)), it has no power to suspend the additional charge. Its powers are limited to requiring a refund of the excess and ordering the filing of an amended supplemental schedule. Without the power to suspend the charge and with the subscriber's recourse being limited solely to seeking a refund, it can hardly be said that the administrative procedure provides plaintiff an adequate remedy. Under these circumstances we hold that the circuit court properly exercised jurisdiction in this cause.

Finally we consider the question whether the city's message tax itself should be included in the tax base on which the same message tax is calculated. Citing *Vause & Striegel, Inc. v. McKibbin* (1942), 379 Ill. 169, and *Agron v. Illinois Bell Telephone Co.* (7th Cir. 1971), 449 F.2d 906, defendants argue that the ordinance provides that the 5% tax is to be levied on "gross receipts," which is defined as the consideration received for the transmission of messages, without any deduction for "any other expenses whatsoever." In *Vause* the court considered a rule promulgated by the Department of Finance which provided that amounts added by retailers to the purchase price of goods in order to pay the 3% retailers' occupation tax were to be included in the base on which the tax was computed. In the example given in the rule itself, if a retailer charged $1 for goods and added 3 cents to the price to reimburse itself for the tax, the "gross receipts" on which the tax would be levied would be $1.03. Plaintiffs contended that only $1 should be included in the "gross receipts." The court disagreed and held the rule valid, pointing out that the General Assembly had made no distinction between amounts billed the customer as tax or as purchase price.

The retailers' occupation tax was later amended to allow the deduction of amounts taken by retailers for reimbursement of the tax. In *Agron* the Seventh Circuit held that the Illinois and Chicago message taxes were includable in the base on which the Federal excise tax was computed.

Defendants contend that both *Vause* and *Agron* stand for the proposition that a tax passed on to consumers is a part of the selling price charged them and is therefore includable in the receipts subject to the tax. As plaintiff points out, however, neither *Vause* nor *Agron* is dispositive of the present case. In *Vause,* unlike Bell here, the retailer, in passing the tax along to its customers, acted without statutory authority, and absent such statutory authority the additional charge merely increased the price of the goods sold. In *Agron* the court did not consider the propriety of assessing a tax on the tax itself; it decided that State and local occupational taxes were properly includable in the base on which the Federal excise tax was assessed.

In support of its contention that it has correctly included in "gross receipts" the amount of the municipal tax, Bell cites *Old Colony Trust Co. v. Commissioner* (1928), 279 U.S. 716, 73 L. Ed. 918, 49 S. Ct. 499, and *Safe Harbor Water Power Corp. v. United States* (Ct. Cl. 1962), 303 F.2d 928. In *Old Colony Trust Co.* the Supreme Court held that an employer's payment of its employee's income tax constituted additional taxable income to the employee. In *Safe Harbor Water Power Corp.* the Court of Claims held that successive payments of the additional tax until the tax obligation was reduced to an infinitesimally small amount were also taxable. Defendants argue that the factual situations in those cases are analogous to that here, and that if income tax reimbursements are deemed income upon which further taxes can be imposed, the tax paid by plaintiff and the members of the class was a portion of "gross receipts" on which the city message tax was properly levied. We do not so interpret

those cases. In our opinion they are authority only for the proposition that reimbursement by a third person to a taxpayer of his income taxes paid was a benefit to the recipient substantially indistinguishable from other income and therefore taxable, and is not authority for defendants' interpretation of the statute here considered.

The definition of "gross receipts" contained in section 1 of the Messages Tax Act provides that, "In case credit is extended, the amount thereof shall be included only as and when payments are received." (Ill. Rev. Stat. 1977, ch. 120, par. 467.1.) Although no similar provision is contained in the Chicago ordinance, it is clear that services provided on credit are not includable in "gross receipts" until payment is actually received. The long-established rule is that the "Taxing laws are to be strictly construed and they are not to be extended beyond the clear import of the language used. If there is any doubt in their application they will be construed most strongly against the government and in favor of the taxpayer. *Peoples Gas Light Co. v. Ames,* 359 Ill. 152." (*Oscar L. Paris Co. v. Lyons* (1956), 8 Ill. 2d 590, 598.) Although the tax was levied upon Bell, it was passed on to the subscriber, and no liability was incurred on Bell's part until payment was actually received. It would appear, therefore, that plaintiff, as the one who paid the tax, is entitled to the benefit of the foregoing rule, and its application would proscribe the construction of the statute which would result in an increase, both in the amount of the tax paid the city and the "costs of accounting" permitted to be charged by the nominal taxpayer. We hold, therefore, that construing the term "gross receipts" to include the municipal tax is erroneous.

For the foregoing reasons the order of the circuit court of Cook County is affirmed and the cause is remanded to that court for further proceedings.

*Order affirmed; cause remanded.*

MR. JUSTICE UNDERWOOD, dissenting:

My disagreement with the majority stems not from the resolution of the narrow tax question involved herein, but from the fact that my colleagues felt compelled to address that issue at all. In my opinion, the plaintiffs should be required to exhaust their administrative remedies before seeking judicial relief.

The majority refers to our recent decision in *Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, as support for the conclusion that the plaintiffs should not be required to exhaust their administrative remedies before the Illinois Commerce Commission. While requiring exhaustion in the *Northwestern University* case, we cited *Van Laten v. City of Chicago* (1963), 28 Ill. 2d 157, and *County of Lake v. MacNeal* (1962), 24 Ill. 2d 253, for the proposition that "[a] party will not, of course, be required to exhaust his administrative remedies when it would be patently useless to seek relief before local bodies." (74 Ill. 2d 80, 88.) The crucial determination which must be made, of course, concerns the precise meaning of the phrase "patently useless."

In *Van Laten,* the plaintiff brought a declaratory judgment action seeking a judicial determination that a certain Chicago zoning ordinance which classified plaintiff's property as residential was void. The court held that it was unnecessary for the plaintiff to exhaust his local administrative remedies where the city of Chicago had twice amended its zoning ordinance after the plaintiff had filed his declaratory judgment action, and the amendments retained the residential classification despite an adverse recommendation by the master after evidence had been taken. In *County of Lake,* the court held that where a municipality institutes an action in court against a property owner for violation of a zoning ordinance, the property owner is entitled to defend on the grounds that the ordinance is invalid even though he has not first sought

local administrative relief, since the action of the municipality in filing a complaint indicates that such a step would be useless.

What is involved in the present case, however, is quite a different matter. Apparently, *no one* has appeared before the Commerce Commission to challenge the method of computation that is employed in calculating the amount of the municipal message tax. While it is true that the Commerce Commission staff was involved in the development of the present formula for computation of the tax, there is no evidence that, given the opportunity, the Commission would not act fairly and competently in resolving a challenge to the tax. In short, under the facts and circumstances of the present case, I do not think it can be said that it would be "patently useless" for the plaintiffs to present their complaint to the Illinois Commerce Commission. Therefore, the narrow exception to the exhaustion requirement recognized by this court in the *Northwestern University* case would appear to be inapplicable here.

Furthermore, contrary to the conclusion of the majority, I think the administrative procedures set forth in the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3) provide plaintiffs with an adequate remedy. Section 72 of the Act provides in part, as follows:

> "When complaint has been made to the Commission concerning any rate or other charge of any public utility and the Commission has found, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 76.

While plaintiffs could have proceeded under section 72, an alternative, and more specific, remedy is provided in

section 36(a):

> "The Commission shall have power to investigate whether or not such supplemental schedule correctly specifies such additional charge, but shall have no power to suspend such supplemental schedule. If the Commission finds, after a hearing, that such supplemental schedule does not correctly specify such additional charge, it shall by order require a refund to the appropriate customers of the excess, if any, with interest, in such manner as it shall deem just and reasonable, and in and by such order *shall require the utility to file an amended supplemental schedule corresponding to the finding and order of the Commission.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 111 2/3, par. 36(a).

In contrast to the majority's statement that the customer's only remedy is a refund, this section clearly grants the Commerce Commission authority to investigate the "additional charge," hold hearings on the matter, order refunds with interest, and require the utility to file an amended supplemental schedule in accordance with the Commission's findings. It is difficult to conceive of a more complete and adequate remedy.

The majority's concern about the Commission's lack of power to "suspend the additional charge" is misplaced. Although the Commission is given the power to suspend certain rate schedules in section 36 of the Public Utilities Act, but not in section 36(a), this in no way impairs the effectiveness of the remedies provided in section 36(a). The procedure for suspension of a proposed rate change is set forth in section 36 as follows:

> "Whenever there shall be filed with the Commission any schedule stating an individual or joint rate or other charge *** the Commission shall have power *** to enter upon a hearing concerning the propriety of such rate or other charge *** and pending the hearing and decision thereon, such rate or other charge *** shall not go into effect. *** All such rates or other charges *** not so suspended shall, on the expiration of 30 days from the

time of filing the same with the Commission *** go into effect and be the established and effective rates or other charges ***." (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 36).

The language was interpreted in *Antioch Milling Co. v. Public Service Co.* (1954), 4 Ill. 2d 200, 204, to mean "that the commission shall analyze a proposed rate change, and reach a conclusion as to whether it is to be permitted to go into effect without a formal hearing, or whether it is to be suspended until a formal hearing has been had."

In contrast, section 36(a) provides that the supplemental schedule specifying the "additional charge" becomes effective upon filing and may not be suspended by the Commission. All this means, however, is that the supplemental schedule is effective pending any investigation and hearing by the Commission. If, after a hearing, the Commission determines that the supplemental schedule does not specify correctly the additional charge, it has the power to order a refund with interest and can require the utility to file an amended supplemental schedule correctly stating the additional charge. Despite the Commission's lack of authority to suspend the supplemental schedule pending a hearing thereon, it can hardly be said that the plaintiffs lack an adequate remedy before the Commission.

Therefore, I would require the plaintiffs to exhaust their administrative remedies before the Commerce Commission.

MR. JUSTICE RYAN joins in this dissent.