THE CITY OF NAPERVILLE, Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.—THE CITY OF BATAVIA, Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District   Nos. 81-207, 81-222 cons.

Opinion filed January 22, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellant.

Katherine S. Janega and Marvin J. Glink, both of Ancel, Glink, Diamond, Murphy & Cope, P. C., of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

These actions, consolidated on appeal, were brought in the circuit courts of Du Page and Kane counties under the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) to review final assessments made by the Department of Revenue against the cities of Naperville and Batavia for State public utilities tax liability (Ill. Rev. Stat. 1979, ch. 120, par. 468 *et seq.*). On February 19, 1981, the circuit court of Du Page County entered an order in the case of City of Naperville v. Illinois Department of Revenue, which in pertinent part found:

"2. 'Gross receipts' which are subject to a 5% tax under the provisions of the Public Utilities Revenue Act, Ch. 120, Ill. Rev. Stat. §468 et seq. (1977) does not include the municipal tax that is billed separately to each user of an electric utility and reflected in the general fund of the plaintiff, City of Naperville, rather than its electric utility fund. This determination is directly analogous to that made by the Illinois Supreme Court in *Getto v. City of Chicago*, 77 Ill. 2nd 346, 396 N.E.2d 544 (1979)."

An identical order, excepting the name of the city, was entered on the same day by the circuit court of Kane County in City of Batavia v. Illinois Department of Revenue. It is this portion of the orders from which the cities appeal.

The Department of Revenue contends on appeal that the circuit courts erred in holding that the term "gross receipts" contained in the Public Utilities Revenue Act does not include the receipt of the municipal public utilities tax collected by the cities from its resident consumers of electricity. It was established at both of the separate administrative hearings before the Department of Revenue that the cities record the receipt of the municipal tax in their general corporate fund and do not include it in their separate electric utility fund. The taxing structure at issue in this case can be summarized as follows.

The cities of Naperville and Batavia each operate an electric utility whereby each purchases power at wholesale and distributes and resells it to its residents. As such, these municipalities are subject to a 5% "gross receipts" tax imposed by the State under the authority of section 2 of the Public Utilities Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 469). Also, under the terms of the Illinois Municipal Code, corporate authorities of any municipality are authorized to tax persons "engaged in the business of distributing, supplying, furnishing, or selling electricity for use or consumption within the corporate limits of the municipality, and not for resale, at a rate not to exceed 5% of the gross receipts therefrom." (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—2.) Since the citites themselves are the persons distributing, supplying, and selling the electricity, they charge their customers (the city residents) this 5% municipal tax. This procedure is authorized by section 36(a) of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 36(a)).

The 5% State tax imposed on Naperville and Batavia pursuant to the Public Utilities Revenue Act is to be based on the "gross receipts" of these cities from the sale and distribution of electricity. Section 1 of the Public Utilities Revenue Act defines "gross receipts" as follows:

" 'Gross receipts' means the consideration received for electricity distributed, supplied, furnished or sold to persons for use or consumption and not for resale and for all services rendered in

connection therewith, including amounts received from minimum service charges, and includes cash, services and property of every kind or nature, and shall be determined without any deduction on account of the cost of the service, product or commodity supplied, the cost of materials used, labor or service costs, or any other expense whatsoever." Ill. Rev. Stat. 1979, ch. 120, par. 468.

The Department's sole contention is that the term "gross receipts" as defined by the Public Utilities Revenue Act should include the 5% tax which the cities charge their resident consumers of electricity pursuant to section 8—11—2 of the Illinois Municipal Code and section 36(a) of the Public Utilities Act.

The trial court determined, and the cities assert on appeal, that the Illinois Supreme Court decision in *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 396 N.E.2d 544, is controlling as applied to the facts in the case at bar. In *Getto*, plaintiff, individually and as the representative for a class of similarly situated telephone subscribers, brought suit against the city of Chicago and Illinois Bell Telephone Company alleging collection of sums in excess of the amount due under the municipal message tax. The message tax authorized the corporate authorities to impose a tax on persons engaged in the business of transmitting messages by means of electricity at a rate not to exceed 5% of the gross receipts for such business. (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—2.) The tax was passed on to the telephone customers by Illinois Bell as authorized by the Public Utilities Act. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 36(a).) The defendants in *Getto* had construed the term "gross receipts," upon which the message tax was based, to include not only customer billings, but also taxes imposed on those billings, including the message tax itself. (77 Ill. 2d 346, 351, 396 N.E.2d 544.) The court used the following example in describing the effect of this taxing procedure:

"* * * if a customer's pretax monthly bill were $10 (ignoring, for the sake of simplicity, the existence of Federal and State taxes), the amount upon which the municipal tax is imposed would not be $10, but $10.50. This results in a municipal tax of 52½ cents, instead of 50 cents, plus a correspondingly larger amount withheld by Bell for its accounting costs." (77 Ill. 2d 346, 351, 396 N.E.2d 544.)

After deciding that the plaintiff had standing to bring the action and that he was not required to exhaust his administrative remedies by proceeding before the Illinois Commerce Commission, the court held that the city's message tax could not properly be included in the tax base upon which the same tax was calculated. In so holding the court stated:

"The definition of 'gross receipts' contained in section 1 of the Messages Tax Act provides that, 'In case credit is extended, the amount thereof shall be included only as and when payments are

received.' (Ill. Rev. Stat. 1977, ch. 120, par. 467.1.) Although no similar provision is contained in the Chicago ordinance, it is clear that services provided on credit are not includable in 'gross receipts' until payment is actually received. The long-established rule is that the 'Taxing laws are to be strictly construed and they are not to be extended beyond the clear import of the language used. If there is any doubt in their application they will be construed most strongly against the government and in favor of the taxpayer. *Peoples Gas Light Co. v. Ames*, 359 Ill. 152.' (*Oscar L. Paris Co. v. Lyons* (1956), 8 Ill. 2d 590, 598.) Although the tax was levied upon Bell, it was passed on to the subscriber, and no liability was incurred on Bell's part until payment was actually received. It would appear, therefore, that plaintiff, as the one who paid the tax, is entitled to the benefit of the foregoing rule, and its application would proscribe the construction of the statute which would result in an increase, both in the amount of the tax paid the city and the 'costs of accounting' permitted to be charged by the nominal taxpayer. We hold, therefore, that construing the term 'gross receipts' to include the municipal tax is erroneous." 77 Ill. 2d 346, 359, 396 N.E.2d 544.

At first glance, the *Getto* case might appear to be controlling of the issue in the case at bar. The definition of "gross receipts" contained in section 8—11—2 of the Illinois Municipal Code, which was at issue in *Getto*, is identical in all relevant respects with the definition contained in section 1 of the Public Utilities Revenue Act which is at issue in the present case. However, on closer examination, we find the rationale for the result in *Getto* to be wholly inapplicable to the facts in the present case.

Due to the taxing structure at issue in *Getto*, the telephone company could pass on the incidence of the municipal message tax to its subscribers. The effect of this was to impose the burden of the tax directly on the subscribers. However, as the supreme court noted, "no [tax] liability was incurred on Bell's part until payment was actually received" from its subscribers. (77 Ill. 2d 346, 359, 396 N.E.2d 544.) Illinois Bell, however, adopted a formula for the addition of a percentage to be added to the net pretax billings in order for it to retain the same amount of dollars after the municipal tax was applied as before the tax was applied. Since Illinois Bell had not yet received payment for its service at the time of billing, the tax could only be computed on amounts it anticipated receiving. Thus, the telephone subscriber was becoming liable for the tax prior to the time at which Bell became liable to the city.

This situation, however, does not exist in the present case. In this case, the taxpayers (the cities of Naperville and Batavia) are separate entities from the consumers of the electricity, and two distinct taxes are

involved. Although a portion of the State tax imposed on the cities may be passed on by the cities to the consumers of electricity (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 36(b)), the State in the present case is not attempting to impose a higher tax on the cities in anticipation of the cities' receipt of the passed-on amounts. The amount of the State tax is merely being computed, in part, with reference to the cities' actual receipt of a wholly separate municipal tax from its resident consumers of electricity. Thus, the problem addressed in *Getto* of "a tax on the tax itself" (77 Ill. 2d 346, 358, 396 N.E.2d 544) is nonexistent in the present case. Also, unlike the situation in *Getto*, the "consideration received" (Ill. Rev. Stat. 1979, ch. 120, par. 468) by the cities, which includes the 5% municipal tax, is not merely anticipated but is, in fact, actually received by the cities at the time liability for the State tax attaches. In *Getto*, the customer billings from Illinois Bell included an amount which anticipated the city's future tax on Illinois Bell's gross receipts.

The cities, however, attempt to bring this case under the *Getto* holding by arguing that since the receipt of the municipal tax is recorded in their general corporate funds and not in their separate general utility funds, the tax is not "actually received" by the public utilities. Although it is clear that the cities are acting in a proprietary rather than governmental capacity when supplying their inhabitants with electricity (*Springfield Gas & Electric Co. v. City of Springfield* (1920), 292 Ill. 236, 250-51, 126 N.E. 739, *aff'd* (1921), 257 U.S. 66, 66 L. Ed. 131, 42 S. Ct. 24), we do not believe this justifies the cities' conclusion that the cities are wholly separate entities from the public utilities. The municipal tax is collected by the cities and the fact that they record these receipts in the general corporate fund we view as nothing more than an accounting procedure which is immaterial to the resolution of the issue in this case. See *Illinois Power Co. v. Mahin* (1977), 49 Ill. App. 3d 713, 719, 364 N.E.2d 597, *aff'd* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.

Having determined that this case is not directly controlled by the holding in *Getto*, we turn to a discussion of a case we view as more relevant to the issue presented herein. In *Agron v. Illinois Bell Telephone Co.* (7th Cir. 1971), 449 F.2d 906, *cert. denied* (1972), 405 U.S. 954, 31 L. Ed. 2d 231, 92 S. Ct. 1171, the issue before the Federal court of appeals was whether certain occupational taxes imposed on Illinois Bell Telephone Company by the State of Illinois and other Illinois municipalities are properly includable in the base on which the Federal excise tax is computed on "amounts paid for * * * communication services." The telephone company was authorized to collect the Federal tax from its subscribers to later be paid over to the United States. The plaintiff contended that the telephone company improperly computed the Federal tax by including certain State and local taxes in the Federal excise tax base.

The court held that these amounts were properly included in the tax base on which the Federal tax was computed because while the additional charges imposed on the telephone subscribers were attributable to the State and local taxes paid by the telephone company, those charges were nevertheless part of the price demanded for telephone service. The court gave the following rationale for its holding:

> "The Government counters that the additional charge is merely part of the compensation demanded by IBT for furnishing the service of transmitting messages; thus, amounts paid to reimburse IBT for its payment of the state and local messages taxes—just as amounts paid to reimburse IBT for all other taxes and for labor costs and equipment repairs—are paid for telephone service within the meaning of the statute. We agree with the Government. All costs incurred in making a product or service available—including the cost of federal, state and local taxes—are ultimately borne by consumers. That the cost of taxes imposed on manufacturers and retailers is added into the price at which goods are sold, even if such taxes are itemized and specifically identified, simply increases the price the consumer must pay to receive the goods or services." (449 F.2d 906, 912.)

We find this reasoning to be persuasive. The Illinois Supreme Court in *Getto* found *Agron* to be inapposite since "the court did not consider the propriety of assessing a tax on the tax itself \* \* \*." (77 Ill. 2d 346, 358, 396 N.E.2d 545.) In neither *Agron* nor the case at bar was the tax base being computed by the anticipated receipt of the very same tax as in *Getto*. In the present case, the State tax imposed pursuant to the Public Utilities Revenue Act is merely computed, in part, with reference to a wholly separate tax. Thus, the language in *Getto* distinguishing *Agron* does not apply to the present factual situation. Since we find *Getto* to be inapplicable and *Agron* to be persuasive, we hold that the term "gross receipts" as defined by the Public Utilities Revenue Act includes the 5% tax imposed pursuant to section 8—11—2 of the Illinois Municipal Code and passed on to the cities' residents in accordance with section 36(a) of the Public Utilities Act. The 5% municipal tax is merely a part of the total price the cities demand for their electric service and, as such, it is properly includable in their "gross receipts." See *Martin Oil Service, Inc. v. Department of Revenue* (1971), 49 Ill. 2d 260, 273 N.E.2d 823; *Jones v. Department of Revenue* (1978), 60 Ill. App. 3d 886, 377 N.E.2d 202.

Finally, we note that our conclusion is reinforced by the actual definition of "gross receipts" contained in the Public Utilities Revenue Act. Section 1 provides that "gross receipts" "shall be determined without any deduction on account of the cost of service, product or commodity supplied, the cost of materials used, labor or service costs, or any other

expense whatsoever." (Ill. Rev. Stat. 1979, ch. 120, par. 468.) The words "any other expense whatsoever" have been interpreted to be all-embracing in their scope. (*Vause & Striegel, Inc. v. McKibbin* (1942), 379 Ill. 169, 172, 39 N.E.2d 1006.) Had the legislature intended to permit the exemption of this municipal tax it surely would have so provided. (379 Ill. 169, 172-73, 39 N.E.2d 1006.) In contrast, we note that section 1 of the Public Utilities Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 468) expressly allows the public utility to exclude the State tax which is added to customers' bills in determining the public utility's gross receipts upon which the amount of tax owed to the State will be based.

Accordingly, for the previously stated reasons, the judgments of the circuit courts of Du Page and Kane counties are reversed.

Reversed.

LINDBERG and NASH, JJ., concur.