560

EDWARD SULLIVAN *et al.*, Plaintiffs-Appellants, *v.* COMMONWEALTH
EDISON COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 81—92

Opinion filed April 27, 1983.—Modified on denial of rehearing July 13, 1983.

William J. Harte, Ltd., and Plotkin & Jacobs, Ltd., both of Chicago (William J. Harte, Robert Plotkin, John G. Jacobs, and Robert P. Schuwerk, of counsel), for appellants.

James R. Bryant, Michael J. Karson, John T. Lenahan, Klein, Thorpe & Jenkins, Ltd., and Ancel, Glink, Diamond, Murphy & Cope, all of Chicago, for appellees City of Evanston, Village of Oak Park, Village of Park Forest, Village of River Forest, and Village of Rosemont.

Richard G. Ferguson, Paul W. Schroeder, and Alan P. Bielawski, all of Isham, Lincoln & Beale, of Chicago, for appellee Commonwealth Edison Company.

Robert A. Helman, Stephen J. Mattson, Leslie A. Stulberg, and Richard J. Klein, all of Mayer, Brown & Platt, of Chicago, for appellee Northern Illinois Gas Company.

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, As-

sistant Attorney General, of counsel), for appellee James Zagel, Director of Illinois Department of Revenue.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs are residents of various suburban Cook County municipalities and customers of defendant utilities, Commonwealth Edison Company, Illinois Bell Telephone Company, and Northern Illinois Gas Company. They brought this class action complaint on behalf of all similarly situated utility customers in their municipalities against the municipalities, the utilities, and the Illinois Department of Revenue, alleging that defendants had collected unlawfully inflated municipal and State utility taxes. Plaintiffs sought damages and declaratory and injunctive relief.

The trial court granted defendants' motion to dismiss some allegations as substantially insufficient in law. Other allegations were dismissed as to some defendants on the ground that other class actions were pending between the same parties for the same cause of action. Plaintiffs appeal the dismissals.

Plaintiffs' complaint alleged that defendants had erroneously interpreted "gross receipts" as used in various statutory provisions relating to the taxation of public utilities by State and municipal governments. Such interpretation allegedly resulted in an inflated tax base which caused the utility taxes to be excessive. Plaintiffs' interest stems from the fact that, pursuant to statute, the burden of these taxes is substantially passed on by the utilities to the customer.

Section 8—11—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—2) authorizes municipal governments to tax public utilities which supply service within the municipality at a rate not to exceed 5% of the utilities' "gross receipts." Pursuant to section 36(a) of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 36(a)), the utilities in turn are permitted to pass on the burden of this tax to the customer by charging an additional charge equal to the sum of (1) an amount equal to such municipal tax, or any part thereof; (2) 3% of such amount to cover accounting costs; "and (3) an amount equal to the increase in taxes and other payments to governmental bodies resulting from the amount of such additional charge."

Similarly, a State tax of 5% of gross receipts is imposed upon defendant utilities pursuant to section 2 of the Messages Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 467.2), section 2 of the Gas Revenue Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 467.17), and section 2 of the Public Utilities Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par.

469). In addition, the utilities are taxed at .08% of gross revenue pursuant to section 7a.5 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111⅔, par. 7a.5), to defray the expense of the Illinois Commerce Commission. The utilities are not, however, authorized to pass on to their customers the entire burden of these various State taxes. Rather, pursuant to section 36(b) of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111⅔, par. 36(b)), only that portion of the 5% tax which exceeds 3% of gross receipts can be passed on. No portion of the .08% tax on gross revenue may be passed on, nor can the utilities collect a fee to cover their accounting costs.

The gist of plaintiffs' complaint was that, for purposes of computing the State utility tax, defendants erroneously inflated the State tax base by including in gross receipts the section 36(a) additional charge collected from customers to offset the municipal tax. Similarly, in computing the municipal utility tax, defendants included in gross receipts not only the amount collected pursuant to section 36(b) to offset the State tax, but also the section 36(a) charge which was based on the municipal tax itself. In addition, defendants included the section 36(a) charges in gross revenue for purposes of computing the .08% State tax imposed by section 7a.5. Plaintiffs take the position that gross receipts should include only those sums received by the utility from the customer to cover the utility service itself. They alleged that defendants' interpretation of gross receipts and gross revenue was unauthorized and resulted in defendants being unjustly enriched and plaintiffs being required to pay taxes upon taxes. Plaintiffs alleged further that defendants' conduct violated both the Federal and State constitutions.

The trial court recognized that defendants' practice of including in the municipal tax base the amounts collected to offset the municipal tax itself was declared impermissible by our supreme court in *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 396 N.E.2d 544. The court found, however, that the practice was already being challenged in two pending class actions involving Illinois Bell, Commonwealth Edison and the municipal defendants. It therefore dismissed this allegation as to those parties.

The trial court found the other methods of computation challenged in plaintiffs' complaint to be proper and authorized by statute. It therefore dismissed allegations arising from or related to such methods of computation as substantially insufficient at law.

On appeal, plaintiffs contend that the reasoning employed by the court in *Getto* requires a finding that none of the tax computation practices challenged in this case were authorized by statute; that if

the trial court correctly construed the statutes in question such statutes are unconstitutional; and that the dismissal of any of plaintiffs' allegations was improper.

We first address plaintiffs' contention that the decision in *Getto* renders invalid all of the tax computation practices challenged in the present case. As here, *Getto* involved a challenge by a utility customer of the utility's and municipality's interpretation of gross receipts as used in section 8—11—2 of the Illinois Municipal Code for purposes of computing the municipal utility tax. Unlike the present case, however, the only practice challenged was the inclusion in the municipal tax base of the section 36(a) charge collected from utility customers to offset the municipal tax itself. Recognizing that the economic burden of the tax had been passed on to the customer pursuant to section 36(a), the court found that the customer had standing to challenge the tax. The court then turned to the definition of gross receipts found in section 8—11—2 but found it to be inconclusive with regard to the challenged practice. In light of this doubt, the court applied the maxim that application of tax laws, when in doubt, should be construed against the taxing body and in favor of the taxpayer and found defendants' construction of gross receipts to be erroneous. Plaintiffs were given the benefit of this maxim because they were required to pay the additional section 36(a) charge prior to the time the utility incurred any liability for the tax itself.

We reject plaintiffs' argument that *Getto* stands for the proposition that utility taxes apply only to amounts which actually have been received by a utility for services rendered. The determination in *Getto* that the utility received the money from its customer to cover the tax before it actually became liable for the tax did not in itself invalidate the utility's manner of tax computation. Rather, this element of timing was relevant only in that it required that the customer, not the utility, be given the benefit of the doubt in interpreting the taxing statute. Similarly, in the present case, if examination of the statutory language in question leaves us in doubt as to its proper construction, that doubt must be resolved in favor of plaintiffs.

Each of the utility tax provisions in question contains its own definition of gross receipts. The definitions found in the State tax provisions are essentially identical. We will first consider the State provisions and then turn to the definition found in the municipal tax provision.

Section 1 of the Messages Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 467.1) (as well as section 1 of the Gas Revenue Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 467.16) and section 1 of the Public Utilities

Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 468)) defines "gross receipts" as "consideration received for the transmission of messages [and for gas and electricity distributed] *** without any deduction on account of the cost of" providing the utility service "or any other expense whatsoever. However, any charges added to customers' bills pursuant to the provisions of paragraph (b) of Section 36 *** shall be excluded in determining such gross receipts."

■ In accord with this definition, defendants excluded the section 36(b) charge from gross receipts in computing the State tax but did include the amounts collected pursuant to section 36(a). We agree with the trial court that their interpretation of the statute in this regard was proper. The municipal utility tax is an occupation tax (*Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 432 N.E.2d 227) imposed upon the utility. (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—2.) As such it is part of the cost to the utility of providing the utility service. (*Agron v. Illinois Bell Telephone Co.* (7th Cir. 1971), 449 F.2d 906, *cert. denied* (1971), 405 U.S. 954, 31 L. Ed. 2d 231, 92 S. Ct. 1171.) The additional charge passed on to the customer pursuant to section 36(a) to offset that tax is not a tax on the customer but rather an additional charge for utility service. (*Waukegan Community Unit School District No. 60 v. City of Waukegan* (1983), 95 Ill. 2d 244; *City of Naperville v. Department of Revenue* (1982), 103 Ill. App. 3d 312, 431 N.E.2d 54; *Agron v. Illinois Bell Telephone Co.*) The legal incidence of the tax rests on the utility even if the burden does not. (*Waukegan Community Unit School District No. 60 v. City of Waukegan; Martin Oil Service, Inc. v. Department of Revenue* (1971), 49 Ill. 2d 260, 273 N.E.2d 823, *cert. denied* (1972), 405 U.S. 923, 30 L. Ed. 2d 794, 92 S. Ct. 961; *City of Naperville v. Department of Revenue; Commonwealth Edison Co. v. Community Unit School District* (1976), 44 Ill. App. 3d 665, 358 N.E.2d 688.) We therefore find that the section 36(a) charge constitutes "consideration received" by the utility for providing the utility service and it was properly included in gross receipts for purposes of computing the State utility taxes. The fact that the utilities' liability for the municipal tax, on which the section 36(a) charge was based, may have arisen simultaneously with that of the State tax is of no legal significance on this question. *Martin Oil Service, Inc. v. Department of Revenue.*

We find significant the fact that the legislature specifically provided that the section 36(b) charge should be excluded from gross receipts yet made no mention of the section 36(a) charge. It is a general rule of statutory construction that an expression of one specific exception precludes other exceptions not mentioned. (*Landfill, Inc. v. Pol-*

*lution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258; *City Savings Association v. International Guaranty & Insurance Co.* (1959), 17 Ill. 2d 609, 162 N.E.2d 345.) Had the legislature intended that the section 36(a) charge should also be excluded from gross receipts it surely would have so provided. (*City of Naperville v. Department of Revenue.*) We also note that the legislature, in enacting section 36(a)(3), obviously recognized that the amount collected by the utility pursuant to section 36(a) would itself be subject to other taxes. That provision allows the utility to charge the customer an additional amount to cover "the increase in taxes *** to governmental bodies resulting from the amount of" the section 36(a) charge. (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 36(a).) Therefore, since examination of the State utility tax provisions does not leave us in doubt as to their application to plaintiffs, we need not utilize the maxim employed in *Getto* that all doubts must be resolved in favor of the taxpayer.

Our determination that the section 36(a) additional charge to cover municipal taxes was properly included in the State utility tax base was likewise reached by this court in *City of Naperville v. Department of Revenue.* In that case the court found *Getto* to be distinguishable in that it involved a tax base which included the anticipated receipt of the very same tax rather than a separate tax. Similarly, in *Agron v. Illinois Bell Telephone Co.*, the court held that the additional charges to cover both the municipal and the State utility taxes were properly includable in the base on which the Federal excise tax was computed. Similar to the present case, the Federal tax was based on amounts paid for the utility service. The *Agron* court recognized that if the municipal and State taxes in question were direct taxes on the utility customers then the amounts attributable to such taxes could not be included in the Federal tax base. Finding their legal incidence to be on the utility, however, the court held that the additional charges passed onto the customer pursuant to sections 36(a) and (b) to cover those taxes were merely part of the cost of providing the utility service.

Relying on *East St. Louis v. Union Electric Co.* (1967), 37 Ill. 2d 537, 229 N.E.2d 552, *cert. denied* (1967), 390 U.S. 948, 19 L. Ed. 2d 1136, 88 S. Ct. 1034, and *Getto*, plaintiffs argue that the customer, not the utility, is the real taxpayer and that *Agron* would have been decided differently had it been preceded by *Getto*. We disagree. *East St. Louis* involved a municipal franchise ordinance which required the utility to pay the municipality an amount by which a certain percentage of its gross revenue exceeded other fees and taxes which it paid to the municipality. The court determined that since the tax was

passed on to the customer pursuant to section 36(a), the section 8–11–2 municipal utility tax was not a "tax" within the meaning of the franchise ordinance so as to permit a set-off. The court, however, was not holding that the customer was the taxpayer. *Waukegan Community Unit School District v. City of Waukegan; Commonwealth Edison Co. v. Community Unit School District* (1976), 44 Ill. App. 3d 665, 358 N.E.2d 688.

Similarly, while the court in *Getto* held that the utility customers who had borne the economic burden of the municipal utility tax thereby obtained standing to challenge the validity of the tax, the court carefully distinguished between the issues of standing and legal incidence. In *Waukegan Community Unit School District v. City of Waukegan*, the Illinois Supreme Court clarified its position on this point, specifically holding that the municipal utility tax constitutes an occupation tax the legal incidence of which is on the utility. The court noted further that in *Getto* it had cited *Agron* with approval on this point. *Getto* found *Agron* to be distinguishable on the question of the propriety of the tax computation in that *Agron* did not involve a tax on the same tax. In that respect the present case is likewise distinguishable from *Getto*.

■ Plaintiffs also contend that even if the section 36(a) charge was properly included in the utilities' gross receipts for purposes of computing the State utility tax, that tax was necessarily excessive because the municipal utility tax, on which the section 36(a) charge was based, was computed in a manner declared impermissible in *Getto*. That erroneous computation thereby rendered the State tax excessive to the extent that it was based upon an excessive section 36(a) charge.

We recognize the fact that the State tax would have been lower if the municipal tax on itself had not been included in the base on which it was computed. The utilities, not the plaintiffs, had the legal obligation to pay the State tax, however, and they were required by statute to include in their State tax base all consideration actually received, including the full section 36(a) charge. Although it was subsequently determined in *Getto* that one component of that charge was excessive, that determination in itself in no way reduced the utilities' gross receipts. Absent such a reduction in gross receipts, the State utility tax base remains the same. *Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, 372 N.E.2d 651.

■ We next turn to the provision which defines gross receipts for purposes of computing the municipal utility tax. Section 8–11–2 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 8–11–2)

defines gross receipts as:

> "the consideration received for the transmission of messages, the consideration received for distributing, supplying, furnishing or selling gas for use or consumption and not for resale, and the consideration received for distributing, supplying, furnishing or selling electricity for use or consumption and not for resale, and the consideration received for distributing, supplying, furnishing or selling water for use or consumption and not for resale \*\*\* and shall be determined without any deduction on account of the cost of [providing such utility service] \*\*\* or any other expenses whatsoever."

Except for the sentence in the State utility tax provision specifically excluding from gross receipts the section 36(b) additional charge, this definition is essentially the same as that found in the State tax provision. Consequently, we find that the same reasoning which justifies inclusion of the section 36(a) municipal tax charge in the State tax base likewise justified the inclusion of the section 36(b) State tax charge in the municipal tax base. Specifically, payment by the utility of State utility taxes is part of the cost to the utility of providing the utility service. (*Agron.*) The additional charge passed on to the customer pursuant to section 36(b) to partially cover that tax is not a tax to the customer, but rather an additional charge for utility service. (*Waukegan Community Unit School District.*) Consequently, the section 36(b) charge constitutes "consideration received" by the utility for providing the service and is properly included in gross receipts for purposes of computing the section 8—11—2 municipal utility tax.

Plaintiffs correctly point out that this is the same provision which was at issue in *Getto.* The court's failure in that case to find statutory authorization for the inclusion in the municipal tax base of the amount received to cover that same tax does not, however, preclude our finding such authorization for inclusion of an amount to cover a separate tax. Indeed, as previously noted, the court in *Getto* distinguished *Agron* on that very basis.

The other practice challenged by plaintiffs involve defendants' inclusion of the section 36(a) charge in "gross revenue" when computing the .08% tax on gross revenue imposed by section 7a.5 of the Public Utilities Act. (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 7a.5.) "Gross revenue" is defined in section 7a.4 as "all revenue which (1) is collected by a public utility \*\*\* (a) pursuant to the rates, other charges, and classifications \*\*\* and (b) pursuant to emergency rates \*\*\* and (2) is derived from the intrastate public utility business of such a utility." While there is no statutory provision specifically authorizing the

utility to pass this tax on to the customer, that portion which is based on the section 36(a) charge is passed on pursuant to section 36(b)(3). Section 36(a)(3) authorizes the utility to charge its customers for "an amount equal to the increase in taxes *** to governmental bodies resulting from *** [the section 36a] additional charge."

■ We find that the same reasoning which justifies inclusion of the section 36(a) charge in "gross receipts" for the purposes of computing the State utility tax also applies here. We note further that the enactment of section 36(a)(3) indicates the legislature's intent that the section 36(a) charge should itself be subject to other taxes.

■ We reject plaintiffs' argument that defendants' interpretation of the provisions in question results in their imposition of a tax on a tax in violation of due process. The State tax is not imposed upon the municipal tax. Rather, the State tax is imposed upon consideration received by the utility for the services it has provided to the customer, which consideration includes the cost to the utility of providing such service. The fact that part of that cost is the utility's municipal tax expense does not result in a tax on a tax situation. The utility, not the customer, is the taxpayer. The same reasoning negates plaintiffs' position that the municipal tax is imposed upon the State tax. We find no double taxation.

We finally consider plaintiffs' contention that the trial court erred in dismissing portions of the complaint on the ground that another action was pending between the same parties for the same cause. Prior to plaintiffs' filing of the present suit, two similar class actions were filed by Chicago resident Charles Getto on behalf of the public utility customers in the city of Chicago. Joined as defendants in those suits were Illinois Bell, Commonwealth Edison, and the city of Chicago. Getto challenged the defendants' practice of imposing the municipal tax on the section 36(a) municipal additional charge. On October 19, 1979, our supreme court affirmed the trial court's denial of motions to dismiss the case against Bell, holding that the challenged practice was unauthorized by statute. *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 396 N.E.2d 544.

The present suit was filed three days after the *Getto* decision, at which time the plaintiff class in the *Getto* actions involved only Chicago utility customers and defendants included only the city of Chicago and the two utilities. On October 24 and 25, 1979, Getto was granted leave to amend his complaints to add as defendants various suburban municipalities, including those joined in the present case. In addition, the trial court enjoined all persons in the potential class of plaintiffs from filing any similar action until further order of the

court. Motions to dismiss Getto's amended complaint were filed by the municipalities challenging Getto's standing to bring suit against them.

On December 19, 1978, and again on February 13, 1980, subsequent to the filing of Getto's amended complaint, the court entered orders certifying a class of Chicago customers in Getto's action against Bell. A comparable class was certified in the Edison case. As noted by the court in *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844, Getto withdrew his motion seeking redefinition and certification of the plaintiff class and instead maintained that the class certified by the court's December 19 order was adequate. We find no evidence to date that the plaintiff class in either of the *Getto* cases has been recertified to include the present plaintiffs.

In the present case the trial court found that, to the extent plaintiffs' allegations arose from the practice invalidated in *Getto*, such allegations were already the subject of other pending actions for the same cause involving the same parties. (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(c).) It therefore dismissed such allegations against Illinois Bell, Commonwealth Edison, and the municipalities taxing those utilities in the manner challenged in *Getto*.

On appeal, plaintiffs maintain that at the time this action was filed, the *Getto* case did not involve the same parties; that section 48(1)(c) of the Civil Practice Act was never intended to be applied to dismiss competing class actions; and that dismissal would deny plaintiffs due process since Getto has not only failed to pursue their claims but lacks standing to do so.

Section 48(1)(c) provides that a motion for dismissal or for other appropriate relief, may be made where "there is another action pending between the same parties for the same cause." Dismissal is not mandatory, however, nor is it the only form of relief afforded by the statute. Rather, the trial court possesses some discretion in determining whether actions should proceed simultaneously. (*A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 419 N.E.2d 23.) In exercising such discretion the court's analysis should be geared toward effectuating the purpose of the statute which is to avoid duplicative litigation. *A.E. Staley Manufacturing Co. v. Swift & Co.; People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 357 N.E.2d 534.

■ Under the present circumstances we believe it to be an abuse of discretion to dismiss these allegations. We find it significant that in the time since Getto amended his complaint, the plaintiff class in *Getto* has not been modified to include the present plaintiffs. A dis-

missal of the present allegations could leave plaintiffs without a remedy, particularly in light of the court order enjoining future actions of this type. We do not believe that the policy of avoiding duplicative litigation requires this result.

For the reasons stated, the order of the circuit court of Cook County dismissing certain allegations of plaintiffs' complaint as insufficient in law is affirmed. The order dismissing allegations as to some defendants on the ground that other class actions were pending is reversed and the cause is remanded.

Affirmed in part; reversed and remanded in part.

McGILLICUDDY and WHITE, JJ., concur.